VAN DE HEY and wife, Respondents, v. CALUMET
   COUNTY and another, Appellants. [Case No. 137.]
DIETZEN and wife, Respondents, v. CALUMET COUNTY and
   another, Appellants. [Case No. 138.]

*Nos. 137, 138. Argued October 2, 1968.—Decided October 29, 1968.*
(Also reported in 161 N. W. 2d 923.)

For the appellants the cause was argued by *Richard E. Barrett,* assistant attorney general, and *Kenneth M. Plaisted* of New Holstein of counsel, with whom on the brief was *Bronson C. La Follette,* attorney general.

For the respondents there was a brief by *Esler & Green* of Kaukauna, attorneys, and *Hugh F. Nelson* of Appleton of counsel, and oral argument by *John E. Esler.*

HALLOWS, C. J.   The plaintiffs Gordon and Margaret Van De Hey, husband and wife, are the owners of a 186-acre farm on the north side of State Trunk Highway 114 and United States Highway 10 in Calumet county about two miles east of the city limits of Appleton. The farm had two sets of buildings and extended along the north side of the highway for approximately one-half mile. It had three driveways to the public highway. A strip of land abutting the highway comprising approximately 5.53 acres was taken and access rights to the highway were restricted to one for residential and agricultural use.

To the west of the Van De Hey farm, George and Elizabeth Dietzen, husband and wife, owned a 96-acre farm which had a frontage of over half a mile along the highway. Some farm buildings and 12.4 acres of land were taken by condemnation and the access to the highway was limited to two restricted driveways. The jury found the fair market value of the farms before and after the taking and as a result the Van De Heys were entitled to just compensation in the amount of $55,200 and the Dietzens to $42,000.

The errors raised on appeal concern alleged prejudicial arguments of the plaintiffs' counsel and errors by the court in the admissibility of evidence. It is claimed the court erred in not admitting into evidence a legend on two maps showing the properties in relation to the proposed improvement of the highway. The maps, although not a part of the official condemnation-relocation order called for in sec. 32.05 (1), Stats., contained legends with language to the effect the right of access from the land retained by the plaintiffs to the highway was for restrictive use, and upon further land use development or proposed expanded driveway use, "permitted access shall be in conformance with the Rules and Regulations, pertaining to the right of access to the state trunk highway, contained in Chapter Hy 33, Wisconsin Administrative Code, existing at the time of development."

It is claimed by the appellants this legend is relevant and material to the question of value and therefore should have been admitted because it shows the limited use of the driveway might be liberalized. We agree the conditions of the restriction on the access are material to the value of the interests taken by the condemnation. The nature and extent of the loss of access rights or a reasonable probable zoning change which would permit a higher use of land is admissible in evidence on the question of value. *Hietpas v. State* (1964), 24 Wis. 2d 650, 130 N. W. 2d 248; *Hastings Realty Corp. v. Texas Co.* (1965), 28 Wis. 2d 305, 137 N. W. 2d 79. However, these

legends, indicating some possible altering or expanding of the access rights dependent upon future conditions without any right in the owner to obtain an expanded use of access, presented a too speculative element of damage to be admitted. Nor was it error to reject Exhibits J and K, which were the legends appearing on the reverse side of the awards.

During the course of the trial an expert for the plaintiffs testified as to the fair market value of the respective farms before and after the taking and gave the basis on which he arrived at his evaluations. He testified he took into consideration the sales of several parcels of land from one-half to five acres for residential purposes in the vicinity of the plaintiffs' farm. It is claimed this evidence was error because the sales were not comparable and also the value of a total piece of property could not be determined by taking the cumulative value of the lots into which the parcel could be divided. *Maxon v. Gates* (1908), 136 Wis. 270, 116 N. W. 758. We think under the facts the evidence was admissible. The expert was evaluating the potential residential use of that part of the farm which could be put to such residential use if the access had not been restricted. That part of the farm lying along the highway could be considered for residential development as the other farms in the neighborhood and across the highway were then being developed. The value of this land could be based on sales of the small parcels which were comparable.

The admissibility of these comparable sales was for the limited purpose of showing a basis for and giving weight to the opinion of value of the expert. The requirement of the foundation evidence of comparableness is not so strict for such purpose as for direct substantive evidence of value. *Bear v. Kenosha County* (1963), 22 Wis. 2d 92, 125 N. W. 2d 375; *Kamrowski v. State* (1967), 37 Wis. 2d 195, 155 N. W. 2d 125. This evidence of comparable sales could not confuse or mislead the jury on the value of the highest or more advantageous use of

that part of the land lying along the highway. Its comparableness was reasonable and thus the evidence was admissible. What weight the evidence should have had based upon the degree of comparableness was for the jury. *Bear v. Kenosha County, supra; Besnah v. Fond du Lac* (1967), 35 Wis. 2d 755, 151 N. W. 2d 725. The balance of the farms not suitable for real estate development was evaluated as farmland.

The measure of compensation for a partial taking as set forth in sec. 32.09 (6) (b), Stats., contemplates the damage to the property from the deprivation or restriction of access to the highway from abutting land, and sec. 32.09 (2), Stats., provides the most advantageous use of the property which actually affects the present market value shall be used in determining just compensation. A foundation for this testimony was made by the evidence of the adaptability of the land to subdividing. *Washburn v. Milwaukee & Lake Winnebago R. R.* (1884), 59 Wis. 364, 18 N. W. 328. Just compensation of the land taken is not restricted to the value only of the present use if a more advantageous probable use actually affects the present market value. We find no abuse of discretion in admitting this evidence.

When the plaintiffs appealed from the award of damages, they named only the state of Wisconsin as the defendant. By sec. 32.06 (10), Stats., the condemnor shall be named the defendant, but it is difficult to determine whether the state, the highway committee or the county is the condemnor. The state moved to include Calumet County as a defendant and this motion was granted. During the *voir dire* of the jury, plaintiffs' counsel referred to Calumet County as a nominal party and to the fact it was not financially involved in the suit. The defendants moved for a mistrial, which motion was denied and the jury was instructed to disregard the statements. The plaintiffs during the trial referred only to the state as the defendant. It is true that Calumet County was not

financially involved in the condemnation. It has no financial interest in the ultimate determination. Although it does receive title to the property, it must convey this title to the state without charge when ordered to do so. Sec. 84.09 (3) (b), Stats. Counsel's statement was one of fact and truth and not made in any emotional or inflammatory manner. Prejudice is a relative term and the harm therefrom must proceed from injustice or unreasonableness. This procedure of having the state, the county highway committee, and the county, all named in a condemnation proceeding and the problems arising therefrom was recently considered in *Kyncl v. Kenosha County* (1968), 37 Wis. 2d 547, 155 N. W. 2d 583.

It is also contended by the appellants that plaintiffs' counsel in his opening statement and closing arguments improperly appealed to the passions of the jury and such arguments were prejudicial because the jury only deliberated one hour and fifty minutes before returning a verdict. The length of time the jury takes in its deliberation does not necessarily show the jury was prejudiced. There is no rule of law constituting a self-executory standard, which equates fairness of deliberations with the amount of time spent thereon. Time may be a consideration but on the present facts is not probative of prejudice on the part of the jury.

In his opening statement, plaintiffs' counsel admitted to the jury that his clients were interested in the amount of money they would receive. It was a frank statement and no doubt true and was made upon the theory the plaintiffs had a right to counteract the court's standard instruction to the jury of the possible bias of interested parties to a lawsuit. We find no unfair or improper argumentation in this technique used by plaintiffs' counsel.

It is also complained counsel argued that any seller, making a voluntary sale of land on the conditions of the condemnation restricting the access rights, belonged in a mental hospital. This seems to us to be mere argu-

mentation and so characterizing a willing seller was not prejudicial.

The remarks concerning the credibility of the expert for the defendants were improper because based specifically on impeachment evidence which was not admitted in evidence but was merely contained in an offer of proof. This parenthetical remark to the effect the witness would testify to what somebody would want him to say was not so devastating as to be prejudicial.

In the closing remarks the plaintiffs' counsel referred to the pride the plaintiffs had in their land and that they were forced to sell part of it. The plaintiffs' remarks were to overcome the psychological disadvantages of being forced to appeal the award and to sue their government when they were not in fact the aggressors. We find no impropriety in this argument.

The final remarks of counsel were couched in the language, "You will render a decision I am sure, so that if you would see these good people next week, next month, ten years from now, or with one or two of them left, whether a widow or widower, you can look them in the eye and you know that you did right. All right!" This language was not an appeal so much to sympathy as it was to fairness on the part of the jury. Besides, a lawsuit is still an adversary proceeding, not a tea party.

*By the Court.*—Judgments affirmed.