RACINE MARINA ASSOCIATES, INC., a Wisconsin corporation, Plaintiff-Respondent,

Thomas BOLDUS, Stafford Crossland, Marshall Cushman, Dennis Gambel, Craig Jones, Joseph Kivlin, David Nearing, William Rohan, Lois Smith, William Struve, Gary Veenstra and others, Plaintiffs-Intervenors

v.

CITY OF RACINE, a municipal corporation, and Board of Harbor Commissioners of the City of Racine, a Commission/Agency of the City of Racine, Defendants-Appellants.

Court of Appeals

*Nos. 92-2214, 92-3162. Submitted on briefs February 11, 1993.—Decided March 31, 1993.*

(Also reported in 499 N.W.2d 715.)

On behalf of defendants-appellants, the cause was submitted on the briefs of *Joseph E. Boyle*, city attorney.

On behalf of respondent, the cause was submitted on the brief of *Wesley R. Mueckler*, of *Riegelman, Kreul & Mueckler, S.C.* of Racine.

Before Nettesheim, P.J., Anderson and Snyder, JJ.

ANDERSON, J.   The city of Racine and the Board of Harbor Commissioners of the City of Racine appeal from a grant of summary judgment to Racine Marina Associates, Inc. (RMA), which invalidated certain fees collected by the board from RMA. The board and city argue that the board has the authority under sec. 30.38,

Stats. (1989-90),[1] to impose user fees on boat slip owners. Because we hold that the fees in this case are not assessed against the users of the public facilities, but are taxes on private property, we affirm.

The facts stipulated to by the parties are as follows. On April 27, 1987, RMA entered into an agreement with Racine county to purchase a partially constructed marina and related facilities which were owned by the county. The agreement also provided that RMA was to complete construction of the boat slips, service center building, administration building, fuel dock and related facilities at the marina. RMA also was to assume all existing contractual and other obligations related to the marina. The purchase was completed on April 30, 1987. Also on that date, RMA and the county executed a "Marina License." The license provided a lease of the lake bed area underlying the marina and owned by the county to RMA for a period of twenty years and eight months. The county was obligated to purchase the marina and related facilities from RMA upon the expiration of the lease, unless renewed. Annual rent was based upon a gross revenue percentage formula. RMA has remained current on its rent to the county, as well as its city of Racine property taxes.

The city of Racine created the Board of Harbor Commissioners of the City of Racine in the 1930's. On July 21, 1987, the city passed resolution 1879 which substantially affected the board's operation. In part, the resolution (1) established the board's jurisdictional boundaries as all navigable waters from Marquette Street east to the mouth of the harbor; (2) empowered the board to regulate and maintain the north and south breakwaters, all navigational aids, small boat harbor,

---

[1] Unless otherwise stated, all statutory references are to the 1989-90 statutes.

internal jetty and log boom;[2] and (3) required the board to establish fees for the creation of a nonlapsing fund which would regulate, operate and maintain public facilities. In December of 1987, the board recommended certain fees to the Racine Common Council.[3] The council approved the recommendation, and on June 10, 1988, the board implemented the fees pursuant to sec. 30.38(9), Stats.

Since the board established the fees, the monies collected have been placed into the nonlapsing fund for use by the board for long-range improvements, maintenance expenses and other services which could be rendered by the board in the future. The board has collected between $40,000 and $60,000 per year in fees from 1988 to 1991. Expenditures for 1988, 1989 and 1990 were $10,436.61, $63,931.68 (the board subsequently determined it was not responsible for $50,600 of this amount), and $16,494.32, respectively. The excess funds remain in the nonlapsing fund.

RMA paid the fees to the board under protest and later initiated suit against the city and the board, alleg-

---

[2] Except for buoys and a navigational light, all of these publicly owned improvements within this jurisdiction are owned by the county.

[3] The yearly fees which were placed into the nonlapsing fund included: (1) $30.00 per slip "for all slips that are directly benefiting from the improvements that were constructed in order to make the harbor safe for slips," (2) $20.00 per slip "for slips that exist or could have existed without the harbor improvements, but will benefit from having safer passage from the lake to the slip," (3) mooring fees of $75.00 for county residents and $150.00 for noncounty residents, and (4) $10.00 per boat which is kept on a trailer at a private location and uses private launching ramps.

Additionally, the nonlapsing fund was to receive 50% of the launching fees collected at the public launching ramp.

ing that they lacked legal authority to implement the fees pursuant to secs. 30.37 and 30.38, Stats. After RMA and the board stipulated to the facts of the case, RMA moved for summary judgment. The trial court granted the motion, reasoning that: (1) if the fees are for the use of the slips, moorings and launching ramps, the fees are improper because those facilities are neither publicly owned nor operated as required by sec. 30.38(9); (2) if the fees are for the use of the harbor itself, the fees are invalid under WIS. CONST. art. IX, sec. 1 and *State v. Jackman,* 60 Wis. 2d 700, 706-11, 211 N.W.2d 480, 484-87 (1973); and (3) if the fees are for the use of the improvements in the harbor, the fee structure does not impose equal fees for all boaters who have equal use of the facilities, violating sec. 30.38(9). Although several parties intervened in the suit as plaintiffs, they did not join RMA's motion and are not involved in the city and board's appeal of the summary judgment.[4]

The issue raised on appeal is limited to whether the slip fees imposed by the board violate sec. 30.38(9), Stats. The interpretation of a statute in relation to stipulated facts presents a question of law which we review *de novo. Thelen v. DHSS,* 143 Wis. 2d 574, 577, 422 N.W.2d 146, 147 (Ct. App. 1988).

Section 30.38(9), Stats., provides in relevant part:

[4] Subsequent to the appeal of the summary judgment, and upon RMA's motion, the trial court issued a judgment for supplemental relief which awarded the RMA damages and interest. The city and board's appeal of this judgment is Case No. 92-3162. Pursuant to an order of this court dated January 5, 1993, Case Nos. 92-2214 and 92-3162 were consolidated based on the fact that the issues involved are identical.

FIXING FEES. A board of harbor commissioners shall fix and regulate all fees and charges for use of the publicly owned and operated harbor facilities and for other services rendered. . .. Equal fees shall be charged for equal services.

In turn, "harbor facility" is defined in sec. 30.01(3), Stats. That statute states:

"Harbor facility" means every facility useful in the maintenance or operation of a harbor, including transportation facilities of all types, terminal and storage facilities of all types, wharves, piers, slips, basins, ferries, docks, bulkheads and dock walls, and floating and handling equipment, power stations, transmission lines and other facilities necessary for the maintenance and operation of such harbor facilities.

*Id.*

The board seems to vacillate on whether the fees are for use or for services rendered. The board first argues that the fees were imposed upon slip owners for "*services rendered* in the upkeep, repair and maintenance expenses on defined public facilities."[5] (Emphasis added.) But then, immediately after stating this argument, the board also argues that the fees were an attempt to impose a "*user fee*" on those persons who would "almost certainly be the nearly exclusive users of these facilities and services."

---

[5] The public facilities in question are stated in the July 21, 1987 council proceedings as: all navigable waters from Marquette Street east to the mouth of the harbor; the north and south breakwaters; all navigational aids (*i.e.*, lights, buoys, etc.); the small boat harbor including the floating dockage; and the internal jetty and log boom.

We hold that the fees are not for "services rendered." "Services rendered," as used in sec. 30.38(9), Stats., does not contemplate the general upkeep, maintenance and repair of public facilities. The phrase encompasses services directly rendered for which the recipient could pay on a per job or per hour basis. Examples could be towing for disabled boats or pier removal.

We also hold that the slip fees are not valid as a fee for the "use of the publicly-owned and operated harbor facilities." *See* sec. 30.38(9), Stats. We agree with the trial court that if the fees were imposed for use of the slips, they are invalid because the slips are privately, not publicly, owned and operated.

Even if the fees are for the use of the public facilities as defined by the city council (the navigable waters, breakwaters, navigational aids, small boat harbor, and the internal jetty and log boom), the fees are invalid. The commission's slip fees are not assessed on the user of the harbor facilities but on the owner of a private slip. The fee is collected from the owner of the slip regardless of whether the slip is occupied by the owner, rented to another or vacant. Where the fee is assessed against the owner of a slip rather than the user of the harbor facility, it is a tax on property instead of a fee for use of the harbor facility. Such a tax is not authorized by sec. 30.38(9), Stats. Furthermore, an owner could have a boat parked at the slip, never leave the slip and thus never use the publicly-owned harbor facilities; yet the owner is still subject to the fee. Where there is no use of the harbor facility, the fee is also invalid under sec. 30.38(9). It is obvious that the fee is assessed for revenue purposes and bears no relation to the cost of maintaining the

public harbor facilities. Under such a scheme, the fee is a tax which the harbor commission is not authorized to levy. *See City of Milwaukee v. Milwaukee & Suburban Transp. Corp.,* 6 Wis. 2d 299, 303-08, 94 N.W.2d 584, 587-90 (1959). We affirm.[6]

*By the Court.*—Judgments affirmed.

---

[6] In holding that these fees imposed on privately owned and operated slips are invalid, we pass no judgment on the validity of the other fees imposed by the commission.