STATE of Wisconsin, Plaintiff-Respondent,

v.

Mark V. TRENTADUE, Defendant-Appellant.†

Court of Appeals

*No. 92–3021–CR. Submitted on briefs September 8, 1993.—Decided December 7, 1993.*

(Also reported in 510 N.W.2d 727.)

†Petition to review denied.

670

For the defendant-appellant the cause was submitted on the briefs of *Gerald P. Boyle*, of counsel, of Milwaukee.

For the plaintiff-respondent the cause was submitted on the briefs of *E. Michael McCann*, district attorney, and *Benbow P. Cheesman, Jr.*, assistant district attorney, of counsel, of Milwaukee.

Before Sullivan, Fine and Schudson, JJ.

SCHUDSON, J.    The issue in this case is whether a police officer has an absolute right to point a gun at anyone, at anytime, for any or no reason despite section 941.20(1)(c), Stats., which prohibits "[i]ntentionally point[ing] a firearm at or toward another." We reject the defendant's argument that, as a matter of law, a police officer can never violate this statute, and we affirm.

On March 24, 1991, Mark Trentadue was arrested for endangering safety by use of a dangerous weapon, contrary to sec. 941.20(1)(c), Stats., after he pointed his gun at a number of individuals. The defense stipulated to the facts from the testimony of the State's two witnesses, Brian Bublitz and Troy Davis. Trentadue did not testify. Therefore, the following facts of this case are undisputed.

At approximately 9:30 p.m. on March 24, 1991, Brian Bublitz, a tow-truck operator, was dispatched to the 4500 block of North Avenue in the City of Milwaukee to tow away a burned-up car. When Bublitz arrived at the scene, he found a squad car with its emergency lights activated parked behind the burned-out vehicle. He also encountered Trentadue, in uniform and on duty as a City of Milwaukee Police Officer.

Bublitz handed a tow slip to Trentadue who returned the slip only partially completed. Bublitz testified that they were "a foot, two feet" apart when Trentadue handed back the slip and that Trentadue was "belligerent," was swearing and was rushing him to hurry up because "he had to get back and watch Wrestlemania on television." Bublitz also testified that he "could smell alcohol on his breath," and that Trentadue's speech was "slurred" and he was "swaying mildly."

Bublitz testified that two males then walked down the sidewalk toward the car when Trentadue walked over to them and "ask[ed] them what their problem was." The males responded, "Nothing," and, Bublitz said, they "didn't do anything to harm me or anything," "[t]hey were just watching, and then the next thing I knew [Trentadue] had his service revolver pointed at the two men." Bublitz stated that Trentadue told them "to get going and they didn't have any business there," and the two males then left.

Bublitz testified that while he was still hooking up the car, another male, Troy Davis, approached and stated that he was the owner of the car and asked where the car was going to be towed. Bublitz stated that Trentadue "went up [to Davis] and asked him what his problem was and what he wanted, and I heard him [Davis] say that he was the owner of the car and

that he was just finding out where I was towing the car to." Bublitz said that "after a few minutes" Trentadue pulled out his gun, pointed it at Davis, and continued to point his gun at Davis "[l]ess than five minutes," before returning it to its holster.

Davis testified that when he approached and asked about the car, Trentadue pulled his gun, pointed it at him and said, " 'Shut the f——— up and let the guy do his work.' " Davis said he then told Trentadue, "Check me, man. I ain't got no warrants or nothing. I ain't got no gun. You can put your gun away." Davis testified that Trentadue responded, " 'That's okay. I'll blow your ass away.' " Davis also testified that Trentadue had his gun drawn for "four, five minutes," during which it was pointed at him for approximately 25 seconds.

The trial court concluded that, based on the stipulated facts offered through the testimony of Bublitz and Davis, Trentadue was guilty of violating sec. 941.20(1)(c), Stats. Because the facts are not disputed, this case presents only a question of law, which we decide *de novo. See Ball v. District No. 4, Area Bd.*, 117 Wis. 2d 529, 537, 345 N.W.2d 389, 394 (1984).

In essence, Trentadue argues that, as a matter of law, police officers can never violate sec. 941.20(1)(c), Stats., and, thus, they do not have to raise any privilege in order to avoid conviction. Defense counsel did not raise the defense of privilege at trial. Instead, counsel stated: "Our position is simply that police officers have an inherent right [to point weapons at citizens while on duty] and do not have to establish it by an affirmative defense."

Trentadue is wrong. Section 939.45(3), Stats., states:

> The fact that the actor's conduct is privileged, although otherwise criminal, is a defense to the prosecution for any crime based on that conduct. The defense of privilege can be claimed under any of the following circumstances:
>
> . . . .
>
> (3)   When the actor's conduct is in good faith and is an apparently authorized and reasonable fulfillment of any duties of a public office.

As the Wisconsin Supreme Court stated in explaining the purpose of the statutory privilege:

> The statutory privilege defense was intended to protect a public officer who, but for the defense provided in sec. 939.45, would be guilty of a crime if he or she were acting as a private citizen, and whose unlawful conduct has "sufficient value to society so that it ought not subject the actor to criminal liability." The statutory privilege defense is designed to provide a justification for conduct which "must be in accord with the actor's function as a public servant, and must be necessary and proportional to the protection and furtherance of the interests at stake."

*State v. Stoehr*, 134 Wis. 2d 66, 85-86, 396 N.W.2d 177, 184-185 (1986) (footnotes and citations omitted).

Before the privilege may be considered by the factfinder, however, the defendant must raise the privilege as an affirmative defense. *Id.* at 84 n.8, 396 N.W.2d at 184 n.8. Once a defendant does so, the burden shifts to the State to disprove the privilege defense beyond a reasonable doubt. *Id.*

Trentadue argues that "one only needs common sense to see that [sec. 941.20(1)(c), Stats.] can not [sic] be said to include on duty police officers." His "common sense" argument that police officers have an absolute

right to point their weapons absent any assertion of privilege is wholly without merit, and has been implicitly rejected in *State v. Schoenheide*, 104 Wis. 2d 114, 310 N.W.2d 650 (Ct. App. 1981). In *Schoenheide*, we considered whether a firefighter escaped criminal liability under sec. 939.45(3), Stats., for having operated a motor vehicle while under the influence of an intoxicant when he got into an automobile accident while responding to an emergency. In discussing the defendant's culpability, we stated:

> We need not decide whether defendant was fulfilling his duties as a public officer. We hold that privilege is not a defense when a firefighter commits the crime of driving while under the influence of an intoxicant while fulfilling the duties of his or her office because driving while under the influence of an intoxicant is not an "apparently authorized" duty of a public office.
>
> No statute authorizes a firefighter to drive while under the influence of an intoxicant in the performance of his or her duties. No part of the duties of a firefighter apparently authorizes him or her to drive while intoxicated. No case suggests that firefighters are apparently authorized to drive while intoxicated. *Common sense suggests the opposite is true in a situation where judgment and skill are vital.*

*Id.* at 116, 310 N.W.2d at 651 (emphasis added).

Here, the defense chose not to assert a privilege defense. Therefore, all that was necessary to support the conviction was evidence establishing that Trentadue pointed a firearm at or toward another person and that he did so intentionally. The undisputed testimony of Bublitz and Davis conclusively estab-

675

lished these elements. Therefore, we affirm the judgment of conviction.

*By the Court.*—Judgment affirmed.