Bernice SPIEGELBERG,
Plaintiff-Respondent,

v.

STATE of Wisconsin and
Department of Transportation,
Defendants-Appellants.

Supreme Court

*No. 2004AP3384. Oral argument April 4, 2006.
—Decided June 27, 2006.*

2006 WI 75

(Also reported in 717 N.W.2d 641.)

For the defendants-appellants, the cause was argued by *Robert M. Hunter*, assistant attorney general, with whom on the briefs (in the court of appeals and supreme court) was *Peggy A. Lautenschlager*, attorney general.

For the plaintiff-respondent there was a brief by *Dan Biersdorf, E. Kelly Keady,* and *Biersdorf & Associates, S.C.,* Milwaukee, and oral argument by *Dan Biersdorf.*

¶ 1. PATIENCE DRAKE ROGGENSACK, J. This case comes to us on certification from the court of appeals. The certified question is whether, when a partial taking affects multiple contiguous tax parcels that have common ownership, the property is to be valued based on: (1) the fair market value of the combined acreage as a single property or (2) the sum of the fair market values of each individual tax parcel. We conclude that Wis. Stat. § 32.09(6) (2003–04),[1] which determines the method by which just compensation is to be determined for a partial taking, permits a flexible approach such that the individual characteristics of each property may be considered, according to each property's highest and best use, in order that the property owner receives just compensation for the taking. Because valuing the tax parcels separately produced a value consistent with the most advantageous use of this property, the circuit court correctly chose the

---

[1] All further references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

method of appraisal employed by Bernice Spiegelberg's appraiser. Therefore, we affirm the judgment and order of the circuit court that awarded $84,200 to the property owner.

## I. BACKGROUND[2]

¶ 2. Bernice Spiegelberg owns five contiguous tax parcels, consisting of approximately 150 acres of land. The Department of Transportation (DOT) condemned a portion of Spiegelberg's land. The taking consisted of a fee acquisition totaling 11.08 acres from three of the five parcels. With the exception of her residence, Spiegelberg leased all five tax parcels together for use as a farm.

¶ 3. The DOT determined the value of the partial taking by valuing the farm as a single entity, before and after the taking, and then subtracting the "after" value from the "before" value. The DOT's appraisal valued all the farm as a single entity worth $368,300 before the taking and $349,400 after the taking. Based on those calculations, its appraiser set the fair market value of the taking of Spiegelberg's property at $18,900.

¶ 4. Spiegelberg, on the other hand, obtained an appraisal for the partial taking based on the sum of the values of the five individual tax parcels both before and after the taking. Using a comparable sales method of valuation, Spiegelberg's appraiser arrived at the following "before" fair market values: (a) Parcel 1: $152,700; (b) Parcel 2: $113,400; (c) Parcel 3: $89,000; (d) Parcels 4 and 5: $114,000; (e) improvements: $63,500. The sum of the fair market values of the parcels and improvements "before" was $532,700, and the sum of their fair market values

---

[2] The facts are taken from the stipulation of the parties.

"after" was $448,500. The appraised fair market value for all of the land taken was $84,200.

¶ 5. Before the circuit court, each party submitted jury instructions and special verdict forms consistent with its theory of valuation for the property that was taken. In August of 2004, the DOT brought a motion in limine seeking to exclude Spiegelberg's appraisal. The circuit court denied the DOT's motion. It also held that Spiegelberg's jury instructions and special verdict would be used at trial. Counsel then discussed how to proceed from those determinations with regard to proof of valuation. The parties entered into an oral stipulation on the record wherein they agreed that since the court had concluded that Spiegelberg's theory of valuation was correct, the DOT had no evidence to present of the fair market value of the property that was taken. The parties concluded that if the circuit court was correct, the value set by Spiegelberg's appraisal correctly established the value of the taking.

¶ 6. In November, a signed stipulation was submitted by both parties. In addition to the facts already related, it included the following recitation: (1) prior to the taking, the five tax parcels either had direct access to existing roads or could have been provided access through the property owned by Spiegelberg; (2) the taking caused damage to only three of the five tax parcels; (3) David Gagnow completed an appraisal for the DOT, which valued all five tax parcels, both before and after the taking, as one parcel; (4) Kurt Kielisch completed an appraisal for Spiegelberg based on the fair market value of each individual parcel, both before and after the taking and then calculated the sum of those values; (5) the circuit court's ruling resulted in the DOT not having evidence to present on the value of the taking; (6) based on the court's ruling "the damages in

this case under the analysis before and after the taking [is] $84,200[,] consistent with the analysis presented by [Spiegelberg]"; (7) if upon appeal it is determined that the circuit court erred: (a) the damages under the before and after analysis will be "blank based" upon the appraisal submitted by the DOT; and (b) the case "will be remanded to [the] circuit court for a trial on the value of the part taken as a separate entity."[3]

¶ 7. The DOT appealed, and the court of appeals certified the question of what method of valuation should be used to accord just compensation to a condemnee whose affected property consists of contiguous individual tax parcels.

## II. DISCUSSION

### A. Standard of Review

¶ 8. We interpret a statute whose meaning is in dispute without deference to the circuit court. *State v. Rasmussen,* 195 Wis. 2d 109, 113, 536 N.W.2d 106 (Ct. App. 1995); *Racine Marina Assocs., Inc. v. City of Racine,* 175 Wis. 2d 614, 618, 499 N.W.2d 715 (Ct. App. 1993). This case also requires us to review the circuit court's application of a statute to stipulated facts. When the facts are not disputed, we decide the remaining question of law independent of earlier court decisions. *State v. Trentadue,* 180 Wis. 2d 670, 673, 510 N.W.2d

---

[3] The Kielisch Appraisal included a "part taken analysis" whereby the value of the taken land was also analyzed separately. That analysis resulted in a valuation for the taking of $62,200. Because this statutory choice of appraisal method under Wis. Stat. § 32.09(6) is less than the other statutory choice, a "before and after" valuation, it was not chosen.

727 (Ct. App. 1993). However, we benefit from the analysis of the previous court's decision. *State v. Cole,* 2003 WI 59, ¶ 12, 262 Wis. 2d 167, 663 N.W.2d 700.

B. Just Compensation.

¶ 9. When property is taken through the power of eminent domain, the legislature has directed that the property owner is to receive "just compensation" for the taking. Wis. Stat. § 32.09. Here, only a portion of Spiegelberg's property was taken so we begin by examining § 32.09(6), the partial taking subsection of § 32.09. Section 32.09(6) states, in relevant part:

> In the case of a partial taking of property other than an easement, the compensation to be paid by the condemnor shall be the greater of either the fair market value of the property taken as of the date of evaluation or the sum determined by deducting from the fair market value of the whole property immediately before the date of evaluation, the fair market value of the remainder immediately after the date of evaluation, assuming the completion of the public improvement and giving effect, without allowance of offset for general benefits, and without restriction because of enumeration but without duplication, to the following items of loss or damage to the property where shown to exist:
>
> (a) Loss of land including improvements and fixtures actually taken.
>
> . . .
>
> (e) Damages resulting from actual severance of land . . . .

¶ 10. The issue before us, and the issue the parties' arguments center on, is how to interpret the statutory term, "fair market value of the whole prop-

609

erty" found in Wis. Stat. § 32.09(6). Both parties' valuation methods subtracted the appraised fair market value of what remained after the taking from an appraised fair market value of the property before the taking. Further, the specific calculations used in each of the party's valuations are not in dispute. The debate lies in whether it is appropriate to appraise the "before" and "after" values with regard to the five individual tax parcels and then sum those differences as a part of the valuation of the taking, or whether all of the contiguous Spiegelberg property should be appraised as a single unit, both before and after the taking. The answer to this question turns on whether the "whole property" language of § 32.09(6) requires that contiguous parcels be valued together as a single unit, or whether they can be valued individually with a sum total then calculated for their collective appraised values.

### 1. The DOT's position

¶ 11. The DOT submits that the appraisal method chosen by the circuit court, which analyzed the summation of the values of various parcels of property, does not meet the requirements of Wis. Stat. § 36.09(6). The DOT argues that the whole of Spiegelberg's property functioned as a single economic entity, a farm comprising 150 acres of land, and consequently the property must be valued as a single entity to properly determine the "fair market value of the whole property."

¶ 12. The DOT contends that the "unit rule" requires that we adopt a single-unit valuation approach to contiguous, commonly-owned tax parcels, as its appraisal has done. It cites *Jonas v. State,* 19 Wis. 2d 638, 121 N.W.2d 235 (1963), in support of this contention.

610

However, our decision in *Jonas* actually turned on the "unity of use," a very different principle from the "unit rule."

¶ 13. In *Jonas,* a seven-acre parcel owned by one corporation and located on the east side of a street was condemned. *Id.* at 640. A second corporation owned a parcel of one and one-half acres on the west of that same street. *Id.* The corporations operated as one concern. *Id.* Jonas contended that there was a unity of use between the two parcels and that in order to fully compensate for the damages arising from the condemnation, both parcels had to be valued. *Id.* We concluded that it was possible that when "two or more distinct parcels . . . are used as a unit, the parcels may be treated as one and the taking of part or all of one of them treated as a partial taking of the combined whole." *Id.* at 642.

■

¶ 14. The possible application of the unity of use rule in condemnation cases does not support the DOT's assertion that Spiegelberg's entire farm must be valued as a single parcel because all of it has been used as a farm. The unity of use rule permits a condemnee to receive compensation when a taking from one property must be considered in terms of its effect on another property, in order for those affected by the taking to be fully compensated. *See City of Milwaukee v. Roadster LLC,* 2003 WI App 131, ¶ 18, 265 Wis. 2d 518, 666 N.W.2d 524 (concluding that a parking lot that was condemned was "occupied" by its owner who used it for access to a business on an adjacent lot; and therefore, the city "took" an essential portion of the business when it took the parking lot). The unity of use rule does not require that property that currently has a single use be valued only for that single use.

¶ 15. Other cases cited by the DOT do refer to the "unit rule," which differs from the unity of use rule. Unit rule cases address the separate interests that may be found in a condemned property. For example, a property may have a fee owner and one or more leaseholders. Those properties that are subject to multiple interests are given one value for the entirety of the condemned property and then that value is apportioned among those who have an interest in the property. *See, e.g., Van Asten v. DOT,* 214 Wis. 2d 135, 140, 571 N.W.2d 420 (Ct. App. 1997) (concluding that "the unit rule . . . stems from the common law theory that anything that was attached to a freehold was annexed to and considered to be a part of it. . . . The unit rule requires that improved real estate be valued in respect to its gross value as a single entity as if there was only one owner."). This is a far cry from the DOT's position, which is if one person owns multiple parcels that are affected by a partial taking, all of the parcels must be valued as though they were one parcel.[4] There is only one interest in the property for which Spiegelberg seeks compensation, her fee simple interest.

2. Spiegelberg's position

¶ 16. Spiegelberg argues that the "whole property" may be the smallest distinct parcel of land that can be independently sold; and therefore, her assess-

---

[4] The unit rule is also discussed in *Green Bay Broadcasting Co. v. Redevelopment Authority of Green Bay,* 116 Wis. 2d 1, 11, 342 N.W.2d 27 (1983) (explaining that "[t]he unit rule is designed to protect the interests of the condemnor . . . . The condemnees . . . are indeed constitutionally entitled to just compensation, but contracts between the owners of different interests in the land should not be permitted to result in a total sum which is in excess of the whole value of the undivided fee.").

ment method comports with the statutory language. Furthermore, Spiegelberg cites Wisconsin case law holding that statutes concerning just compensation for property taken in an eminent domain proceeding must be liberally construed in favor of the condemnee. *See Standard Theatres, Inc. v. DOT,* 118 Wis. 2d 730, 743, 349 N.W.2d 661 (1984). Spiegelberg emphasizes that the DOT's presumption that the legal distinction of parcels should be ignored in favor of a rule that would treat contiguous parcels as one parcel is contrary to our holding in *Standard Theatres.* She contends that there is no reason not to value separate tax parcels separately; they have separate legal descriptions; they can be developed distinctly according to their zoning; and they can be bought and sold freely, without further subdivision or attachment to other land. Finally, Spiegelberg argues that we should recognize this "reality" of real estate, but contends that at a minimum, separate legal tax parcels should be valued separately if it is beneficial to the property owner to do so. This, Spiegelberg asserts, is in accord with our decision in *Standard Theatres,* as well as the legislative directive of Wis. Stat. § 32.09(6).

3. Wisconsin Stat. § 32.09(6)

¶ 17. In order to address the parties' arguments, we must interpret and apply the phrase, "fair market value of the whole property" found in Wis. Stat. § 32.09(6). When we interpret a statute, we rely on the criteria set out in *State ex rel. Kalal v. Circuit Court for Dane County,* 2004 WI 58, 271 Wis. 2d 633, 681 N.W.2d 110. In *Kalal,* we explained that:

> [T]he purpose of statutory interpretation is to determine what the statute means so that it may be given its full, proper, and intended effect.

*Id.*, ¶ 44. Context is also important when determining the plain meaning of a statute, as is the purpose of the statute and its scope, if those qualities can be ascertained from the language of the statute itself. *Id.*, ¶¶ 46–48. These are all intrinsic sources for statutory interpretation. *Id.* However, if statutory language is ambiguous, we often consult extrinsic sources such as legislative history. *Id.* at ¶ 48.

¶ 18. The disagreement between the parties in their interpretations of the phrase, "fair market value of the whole property," centers on the words, "whole property." Those two words can be understood by reasonably well-informed individuals in two or more senses. For example, in some circumstances those words could be interpreted as the DOT suggests as requiring all the property affected by the taking to be valued as one unit. Or, "whole property" could be interpreted as the cumulative value that is derived by taking the sum of the individual effects of the taking on each parcel, as Spiegelberg suggests. Accordingly, we conclude that the statute is ambiguous. *Id.*, ¶ 47.[5]

¶ 19. The word "whole" is not defined in the statute. Non-technical words that are not defined in a statute are to be given their ordinary meanings. *Town of LaFayette v. City of Chippewa Falls*, 70 Wis. 2d 610, 619, 235 N.W.2d 435 (1975). We may consult a dictionary to aid in statutory construction of undefined words. *Id.* We do so for "whole." A dictionary defines

---

[5] Even though we may use legislative history as an assist in interpreting an ambiguous statute, *State ex rel. Kalal v. Circuit Court for Dane County*, 2004 WI 58, ¶ 48, 271 Wis. 2d 633, 681 N.W.2d 110, it does not assist us here because the legislature provided no history for its insertion of "fair market" and "whole" in the 1961 amendments to Wis. Stat. § 32.09(6).

"whole" as: "a complete amount or sum : a number, aggregate, or totality lacking no part, member, or element." *Webster's New Collegiate Dictionary*, 1338 (1977). This definition suggests that the use of the word "whole" when taken in the context of Wis. Stat. § 32.09(6) means that no part of a property is to be left out in determining the property's fair market value. Stated otherwise, an appraisal that complies with the statute must address the complete property, in its totality. Accordingly, the word "whole" does not require that a valuation of contiguous tax parcels employ a particular method of appraisal, but rather that no part of a property affected by a partial taking be omitted from the valuation used to establish just compensation.

¶ 20. Neither the dictionary definition nor our understanding of it establishes which definition of "whole property" is correct because both the DOT's and Spiegelberg's interpretations come within the definition. However, there are other contextual directives within Wis. Stat. § 32.09 and our interpretation of the compensation that is due to a condemnee that assist us in: (1) choosing the correct appraisal method for Spiegelberg's property and (2) comparing the Spiegelberg appraisal and the DOT appraisal to those statutory directives.

¶ 21. First, to assist in our construction of the statutory language, "fair market value of the whole property," we consider "fair market value," which has a well-established meaning. In *Pinczkowski v. Milwaukee County*, 2005 WI 161, 286 Wis. 2d 339, 706 N.W.2d 642, we interpreted "fair market value" as:

> Fair market value is "the amount for which the property could be sold in the market on a sale by an owner

615

willing, but not compelled, to sell, and to a purchaser willing and able, but not obliged, to buy."

*Id.,* ¶ 18 (citations omitted). We note that Wis. Stat. § 32.09(6) requires that just compensation will take into account the fair market value. Both appraisals said that they were based on this standard.

¶ 22. Second, we have consistently held that when compensating condemnees in eminent domain proceedings, the "highest and best use" of the property should be considered in the valuation. In *Bembinster v. DOT,* 57 Wis. 2d 277, 203 N.W.2d 897 (1973), we explained:

> It is well established that market value in an eminent-domain proceeding is to be based not necessarily on the use to which the property was being put by its owner at the time of taking but rather on the basis of the highest and best use, present or prospective, for which it is adapted and to which it might in reason be applied.

*Id.* at 283 (citations omitted). The Spiegelberg appraisal (Kielisch Appraisal) was based on the highest and best use that included residential development, as is described more fully below. Kielisch Appraisal, p. 17. The DOT appraisal (Gagnow Appraisal) limited its inquiry of the property's highest and best use to farming. Gagnow Appraisal, pp. 11–12.

¶ 23. Third, Wis. Stat. § 32.09(6) provides two valuation choices: (1) "the fair market value of the property taken" or (2) "the sum determined by deducting from the fair market value of the whole property immediately before the date of evaluation, the fair market value of the remainder immediately after the date of evaluation." We are required by § 32.09(6) to employ that valuation choice that will provide the "greater" compensation to the property owner. Although both the DOT appraisal and the Spiegelberg

appraisal use the before and after method, the Spiegelberg appraiser also used a before and after method that best fit the unique characteristics of the land. Therefore, although the appraisal with the higher value may not always come within the statutory directive, here it fits the spirit, as well as the letter, of § 32.09(6) and it results in greater compensation to the property owner.

¶ 24. Fourth, the requirement of Wis. Stat. § 32.09(2) that the "most advantageous use" be considered and the concept of "highest and best use" also are helpful to our deciding whether the circuit court correctly selected the Spiegelberg appraisal. In *Clarmar Realty Co. v. Redevelopment Authority of Milwaukee,* 129 Wis. 2d. 81, 383 N.W.2d 890 (1986), we explained:

> [Section] 32.09, Stats., governs the determination of "just compensation" in eminent domain proceedings in this state. It requires that "[i]n determining just compensation the property sought to be condemned shall be considered on the basis of its most advantageous use but only such use as actually affects the present market value." ... *The term "most advantageous" use as it appears in this section is synonymous with "highest and best" use ....*

*Id.* at 90 (emphasis added).

██

¶ 25. In *Clarmar,* we also set out three conditions for the valuation of prospective uses:

> [O]ur standards have permitted admission of evidence of prospective land uses in condemnation cases under three conditions: (1) if the prospective use is the "most advantageous" use of a condemned parcel; (2) if the prospective use is "reasonably probable"; and (3) if the prospective use is not imaginary or speculative.

*Id.* at 91–92 (citing *Carazalla v. State,* 269 Wis. 593,

598, 70 N.W. 208 (1955)). When considering the "highest and best use," we note that it accounts for the effect of such proposed use on the present market value of the property.[6] Therefore, even if an owner chooses not to engage in the most profitable use, such use may nevertheless make the property more valuable to the owner in the event of a sale. This value, based on "highest and best use," is what is to be valued in condemnation. For example, in *Utech v. City of Milwaukee,* 9 Wis. 2d 352, 101 N.W.2d 57 (1960), we held that the owner's choice of present use was not conclusive in determining the "most advantageous use" because the present use may be unrelated to the value of the real estate. *Id.* at 357.

¶ 26. Here, the Spiegelberg appraisal considered the property's use for residential large lot development, as well as its current use as a farm. Kielisch Appraisal, p. 18. The consideration of residential development and recreational use was reasonable as each parcel was readily saleable and the zoning permitted those uses. Therefore the proposed uses were not speculative.

¶ 27. Fifth, Wis. Stat. § 32.09(2), and our past interpretations of its requirements, assist in our analysis. As we mentioned above, § 32.09(2) directs that when determining just compensation, a court should consider the "most advantageous use but only such use as actually affects the present market value." The Spiegelberg appraisal followed this directive. It examined:

---

[6] Wisconsin Stat. § 32.09(2), which requires consideration of the most advantageous use that is synonymous with highest and best use, provides:

> In determining just compensation the property sought to be condemned shall be considered on the basis of its most advantageous use but only such use as actually affects the present market value.

the highest and best use of the subject property, including an analysis of its present and future utility. [And] [t]he specific location, extent and utility of the land and its Market Value in the real estate market considered as if vacant and available for use.

Kielisch Appraisal, p. 7. Even though all of the property, with the exception of the improvements, had been leased for farming, the Kielisch Appraisal examined the potential use of the parcels, before the taking, as "residential large lot development land for parcels 1–3 and as a recreational land use with a potential of having some residential improvements for parcels 4 and 5." Kielisch Appraisal, p. 18. After the taking, that potential was diminished, not just because of the acres taken, but also because of other factors. Kielisch Appraisal, p. 19–22. For example, the acres taken from parcel 3 left it "with a fraction of the lands not affected by the Shoreland or the Wetland overlay district zoning," thereby reducing the potential to build upon it. Kielisch Appraisal, p. 19.

¶ 28. The approach used in the Kielisch Appraisal is also consistent with our interpretation in *Van De Hey v. Calumet County*, 40 Wis. 2d 390, 161 N.W.2d 923 (1968), of how to determine "the most advantageous use" set out in Wis. Stat. § 32.09(2). *Van De Hey* involved a partial taking under subsec. (6), wherein 5.53 acres were taken from a 186–acre farm. *Id.* at 392. The strip of land taken also had three driveways for public highway access, which the condemnation limited to one public highway access after the taking. *Id.*

¶ 29. During the course of the trial, the expert for Van De Hey testified about the before and after values of the farm, and in doing so, he took into account the sales of several parcels of land from one-half to five acres as residential lots in the vicinity of the Van De

619

Hey property. *Id.* at 394. Objection was made that this was improper because "the value of a total piece of property could not be determined by taking the cumulative value of the lots into which the parcel could be divided." *Id.* We disagreed, and held that the valuation method was proper because Van De Hey's expert was able to establish "the potential residential use of that part of the farm which could be put to such residential use if the access had not been restricted." *Id.* In addition, this testimony was held appropriate under Wis. Stat. § 32.09(2). As we explained:

> The measure of compensation for a partial taking as set forth in sec. 32.09(6)(b), Stats., contemplates the damage to the property from the deprivation or restriction of access to the highway from abutting land, and sec. 32.09(2), Stats., provides the most advantageous use of the property which actually affects the present market value shall be used in determining just compensation. A foundation for this testimony was made by the evidence of the adaptability of the land to subdividing.

*Id.* at 395. The Spiegelberg appraisal is consistent with *Van De Hey;* the DOT appraisal is not.

¶ 30. We derive the following conclusions from our statutory analysis of the terms chosen by the legislature: (1) "fair market value" relates to the price a willing buyer would pay to a willing seller; (2) the requirement to consider the "whole property" does not require that an individual assessment always treat contiguous, commonly owned tax parcels separately or as a single unit, but requires that no portion of the property be left out of an assessment; (3) the requirement of Wis. Stat. § 32.09(2) that a property's "most advantageous use but only such use as actually affects

the present market value" be considered as a part of a valuation is linked to the determination of the "fair market value" required by § 32.09(6); and (4) how to apply the language of § 32.09(6) to arrive at just compensation depends upon considerations related to each property's individual characteristics.

¶ 31. Because Wis. Stat. § 32.09(6) does not specify whether contiguous, commonly-owned tax parcels should be separately appraised or appraised as a collective unit, we conclude that when the property's "highest and best" use that affects its present market value is most appropriately appraised by considering the contiguous tax parcels separately, that is the appropriate appraisal method. Conversely, when, according to the above-addressed rules, the "highest and best use" is more adequately represented through an appraisal of the property as a single unit, that approach is the one that is appropriate. Which method is required by § 32.09(6) will depend on the unique qualities of the specific property affected by the taking and its "fair market value." The ascertainment of the property's "fair market value" depends upon the common law definition of "highest and best use," which we have determined is synonymous with the "most advantageous use" set out in § 32.09(2). And finally, just compensation is to take into account the principle of *Standard Theatres:*

> [W]e note that this court has recognized that the rule of strict construction should be applied to the condemnor's power and to the exercise of this power. This is because the exercise of the power of eminent domain has been characterized as an "extraordinary power," and the rule of strict construction is intended to benefit the owner whose property is taken against his or her will. Conversely, *statutory provisions in favor of*

621

*the owner, such as those which regulate the compensation to be paid to him or her, are to be afforded liberal construction.*

*Standard Theatres,* 118 Wis. 2d at 742–43 (citations omitted; emphasis added).

¶ 32. In summary, it is undisputed that at the time of condemnation each of the tax parcels could have been sold as a separate individual property. Therefore, such sales were a readily available prospective use, in conformity with *Van De Hey* and *Carazalla.* Sale of the property as separate tax parcels would have been more advantageous, or the highest and best use, as compared with the sale of the property as a single unit. It also would have garnered a greater payment for Spiegelberg. That she had not yet used the land as separate tax parcels or for a venture other than farming is not dispositive, as we explained in *Utech.* It is undisputed that the before-and-after appraisal that separately considered each of the individual tax parcels favored Spiegelberg, in conformity with *Standard Theatres.* According to these factors, the circuit court correctly determined that the Spiegelberg appraisal complied with Wis. Stat. § 32.09(6) and the DOT appraisal did not.[7]

---

[7] We appreciate the dissenting opinion's concern with the status of the relatively undeveloped record. Dissent, ¶¶ 42–67. For example, the dissent is concerned with the lack of a "platted subdivision of the property or a certified survey." *Id.* at ¶ 60. However, this concern is misplaced. The dispute in this case was not about whether Spiegelberg could create a subdivision with her property. But rather, whether valuing the five separate parcels individually or valuing them as a unit satisfied the valuation direction of Wis. Stat. § 32.09(6) that "the fair market value of the whole property" be considered. The State said the statute required valuing the five parcels as one unit and

## III. CONCLUSION

¶ 33. We conclude that Wis. Stat. § 32.09(6), which determines the method by which just compensation is to be determined for a partial taking, permits a flexible approach such that the individual characteristics of each property may be considered, according to each property's highest and best use, in order that the property owner receives just compensation for the taking. Because valuing the tax parcels separately produced a value consistent with the most advantageous use of this property, the circuit court correctly chose the method of appraisal employed by Bernice Spiegelberg's appraiser. Therefore, we affirm the decision of the circuit court that awarded $84,200 to the property owner.[8]

*By the Court.*—The judgment and order of the circuit court is affirmed.

¶ 34. ANN WALSH BRADLEY, J. *(dissenting)*. I agree with the majority's flexible approach in determining which is the correct method of valuation. It depends on the facts which address the individual characteristics and unique qualities of the property. I likewise substantially agree with the legal standards the majority sets forth. However, I do not join the majority's

Spiegelberg said valuing each separate tax parcel and then summing those values satisfied the statute. We agreed with Spiegelberg.

[8] Spiegelberg has moved to strike the portion of the State's reply brief that raises Spiegelberg's alleged failure to comply with Wis. Stat. § 32.05(5) because this issue was not raised prior to the filing of the State's reply brief. We held Spiegelberg's motion in abeyance and addressed the § 32.05(5) issue at oral argument with both Spiegelberg and the State. We do not rely on § 32.05(5) in our opinion. Accordingly, we deny Spiegelberg's motion to strike.

application of those standards here because it is impossible to meaningfully apply them on the inadequate record before us.

¶ 35. We cannot determine on this record what is the most advantageous use of Spiegelberg's property. Without more, we cannot decide whether it is reasonably probable that the separate parcels will be used for residential or recreational use.

¶ 36. The problem in this case arises because on the morning of the first day of the jury trial, before any evidence was admitted, the circuit court chose the exclusive method of valuation. The circuit court took no evidence, and it made no determinations with respect to the applicable legal standards set forth by the majority.

¶ 37. Further proceedings are necessary to determine whether the individual characteristics and unique qualities of the property should preclude either Spiegelberg's valuation method or the DOT's. I would therefore reverse the circuit court and remand for those proceedings. Spiegelberg could then seek to show that the use she proposes is the most advantageous and is reasonably probable, and the circuit court could apply the standards articulated today by the majority. Accordingly, I respectfully dissent.

I

¶ 38. I substantially agree with the legal standards set forth by the majority. It correctly determines that just compensation in this case is pegged to "fair market value of the whole property" pursuant to Wis. Stat. § 32.09(6) (2003–04).[1] Majority op., ¶ 21.

---

[1] All references to the Wisconsin Statutes are to the 2003–04 version.

¶ 39. In addition, the majority correctly recognizes that the "most advantageous use" standard should apply:

> In determining just compensation the property sought to be condemned shall be considered on the basis of its most advantageous use but only such use as actually affects the *present* market value.

Section 32.09(2) (emphasis added); *see also* majority op., ¶ 24 & n.6.

¶ 40. The majority also correctly acknowledges that the case of *Clarmar Realty Co. v. Redevelopment Authority,* 129 Wis. 2d 81, 383 N.W.2d 890 (1985), provides the test for the types of potential uses that may be considered in determining what is the most advantageous use. *See* majority op., ¶¶ 24–25. Under *Clarmar,* the prospective use must be:

(1) the most advantageous use;

(2) reasonably probable; and

(3) not imaginary or speculative.

*Id.,* ¶ 25 (citing *Clarmar,* 129 Wis. 2d at 91–92).

¶ 41. In addition, the majority correctly determines that the application of § 32.09(6) to arrive at just compensation depends upon the facts presented and each property's individual characteristics. *See* majority op., ¶ 30. Likewise, it correctly determines that whether contiguous, commonly-owned parcels should be valued as a unit or separately to arrive at just compensation will depend upon the unique qualities of the specific property affected by the taking. *Id.,* ¶ 31.

## II

¶ 42. Having set forth these standards, the majority nonetheless fails to meaningfully apply them. This is not surprising because the inadequate record before us makes that impossible.

¶ 43. In order to see how the majority went wrong, it is important to first understand precisely what did and did not occur in the circuit court proceedings.

¶ 44. The DOT filed a motion in limine seeking to prohibit Spiegelberg from introducing evidence or making arguments using a calculation of the property's value "based upon the existence of hypothetical subdivision of such property." Spiegelberg opposed the motion, asserting "there is nothing 'hypothetical' about the division of [the] property." The parties each submitted proposed jury instructions and special verdicts reflecting their respective theories of valuation.

¶ 45. On the first day scheduled for trial, the circuit court briefly heard argument from the parties with respect to the DOT's motion. With little explanation, the court tentatively denied the motion, stating that it would "give that a little more thought at this point."

¶ 46. The circuit court then conducted an in-chambers conference that was not recorded and that addressed the proposed jury instructions. When the court and parties were back on the record, the court recounted:

> Okay. And we had an in-chambers conference . . . and my ruling still would be that as far as the jury instructions would be consistent with my prior ruling as far as denying the motion in limine and going essentially with [counsel for Spiegelberg]'s jury instruc-

tions as to the jury looking at separate tax parcels as far as the diminution of value for his clients individually. And I guess we are kind of contemplating here as to what's the next step, essentially whether it's an offer of proof from both sides and just how we want to proceed.

Spiegelberg's counsel explained that he and the DOT had agreed that under the court's ruling, only Spiegelberg had relevant evidence to offer on the question of damages. Counsel continued:

[T]here was basically going to be a stipulation by us and that we understand the Court's ruling and that if that ruling is affirmed so that if these are to be looked at as if it is appropriate to look at as separate tax parcels, then the plaintiffs' number would control . . . and if the court of appeals says no, they have to be treated as a whole all together, then it would be the [DOT]'s evidence.

¶ 47. At that point in the proceedings, the circuit court indicated its approval of the parties' stipulation and set forth its rationale for denying the DOT's motion in limine:

Yes, that's an excellent concept there. Essentially, I just wanted to make part of the record *I see no distinguishing traits of a certified survey map versus a separate tax parcel.* That's part of my reason and rationale for that.[2] So I guess we have a transcript here. I don't know if we need to make anything more as a matter of record other than to have a stipulation and order then.

(Emphasis added.)

¶ 48. The circuit court did not rule on the most advantageous use of the property. It did not inquire into

_____

[2] If the circuit court had some other reason or rationale, it is not clear from the record.

whether residential development or recreational use of Spiegelberg's property as separate parcels was reasonably probable. It did not examine the individual characteristics or unique qualities of the property. The court took no evidence with respect to these legal standards that the majority sets forth. It did not make any findings of fact. Rather, its determination came down to one thing: It saw "no distinguishing traits of a certified survey map versus a separate tax parcel."

¶ 49. Over two months later, the parties filed a brief stipulation. Only a few undisputed facts were presented. The recitals in the stipulation included that "the subject property is comprised of 150.36 (gross) acres of agricultural land held as five contiguous separate tax parcels by the plaintiff."[3]

¶ 50. The three-page, double-spaced stipulation primarily consisted of the parties' offers of proof and a recitation of the procedural history of the case. It incorporated the report of Spiegelberg's appraiser as

---

[3] The other undisputed facts in the stipulation were as follows:

(A) "The five tax parcels are contiguous except for the two roads that cut through the parcels as shown in Exhibit A."

(B) "[T]he taking consisted of a total fee acquisition of 11.08 acres (9.21 acres of new right-of-way and 1.87 acres of an existing right-of-way) from three of the five separate legal parcels, as shown in Exhibits B and C."

(C) Exhibit A was a one-page aerial map of the property before the taking. Exhibit B was a one-page aerial map of the property after the taking. Exhibit C was three pages of DOT project plat maps.

The majority's use of the stipulation conflates undisputed facts with disputed facts. The first two of seven "facts" in ¶ 6 of the majority opinion actually come from Spiegelberg's offer of proof, which was competing with the DOT's offer of proof.

her offer of proof, and stated that as a further offer of proof she "would establish that before the taking, the five tax parcels either had direct access to existing roads or could have been provided access by the plaintiff through property owned by plaintiff."

¶ 51. The stipulation also incorporated the report of the DOT's appraiser as its offer of proof, and stated that as a further offer of proof it "would establish that the subject property had not been transferred for five years prior to the taking, [and] had been used in its consolidated form, as a dairy farm, which at the time of the taking the plaintiff had leased, with the exception of the residence, for use as a farm."

¶ 52. The circuit court entered judgment on the stipulation, and the DOT appealed.

¶ 53. Having detailed what did and did not occur in the circuit court proceedings, I turn to the majority's analysis. The majority concludes that "the circuit court correctly determined that the Spiegelberg appraisal complied with Wis. Stat. § 32.09(6) and the DOT appraisal did not." Majority op., ¶ 32. Putting aside whether the circuit court can be said to have actually made any such determination, the majority's conclusion largely rests on two determinations, neither of which holds water on the inadequate record before us.

¶ 54. First, the majority determines that the Spiegelberg appraisal's "consideration of residential development and recreational use" was "reasonable" because each parcel was "readily saleable" and the zoning "permitted" those uses. *Id.,* ¶ 26. Therefore, reasons the majority, the proposed uses were "not speculative." *Id.* In making this determination, the majority first introduces the concept of "readily saleable" without defining it, thereby begging the question of whether

this is the same standard as that required under *Clarmar:* "reasonably probable."

¶ 55. If the standards are the same, then the majority has apparently concluded that Spiegelberg's proposed uses are "reasonably probable" as a matter of law.[4] Based on what facts?

¶ 56. Second, the majority determines that Spiegelberg's appraisal "followed [the] directive" that just compensation should be based on the most advantageous use. Majority op., ¶ 27. This is a curious determination for an appellate court to make on the record here because the parties' respective appraisals show that the most advantageous use remains in dispute.

¶ 57. Spiegelberg's appraisal report states that "[t]he land use [in the area] is changing from agricultural to residential. There are several newer residential developments starting in the area." In the report, her appraiser opines that "[t]he Highest and Best Use of the property lying to the south of [a highway cutting through the northernmost parcel] is for residential development . . . ."

¶ 58. The DOT's appraisal report, in contrast, states that "[a]t this time the neighborhood is considered to be in the stable to slow growth life stage." The DOT's appraiser opines that whether vacant or as currently improved the highest and best use is for "agricultural and recreational use." It also states that "[a] portion of the subject is in a designated flood plain"

---

[4] If the standards are not the same, then it remains unclear why the majority opinion has failed to apply the reasonably probable standard. Perhaps the answer is that the proper standard cannot be meaningfully applied on the inadequate record before us.

and "[a] portion of the subject is in a designated wetland." In addition, the DOT's appraisal report notes that in order for the land to be used for residential purposes, "[p]rivate systems would be required; well for water and a mound, conventional or holding tank for sewerage."

¶ 59. The majority is apparently concluding, as a matter of law, that the most advantageous use of the property as affects *present* value is as separately-sold parcels for residential development or recreational use. This requires an unspoken finding by the majority that the report of Spiegelberg's appraiser is credible while the report of the DOT's appraiser is not. Even if this court could make such a finding, how can the majority make this finding on the record before us? What facts support it?

¶ 60. Moreover, the record leaves unclear the significance of some of the few undisputed facts. For example, the parties stipulated that Spiegelberg's property is divided into five tax parcels. Also, Spiegelberg conceded at oral argument that there has not been a platted subdivision of the property or a certified survey. The majority does not explain the significance or insignificance of these facts with respect to whether the prospective use of the land for residential development or recreational purposes is reasonably probable.

¶ 61. It appears the record is silent as to the significance or insignificance of these facts. At oral argument, counsel for the DOT attempted to provide some explanation. It does not support the majority's conclusion:

> There is no evidence in the record as far as I'm aware that would support a determination by the court—by this court or by the trial court—that the

631

parcels needed no further permits. It's true that the properties could be sold—theoretically. . . . The tax key number as far as I'm aware really doesn't mean anything per se with regard to the property. It is a methodology, which is developed by—as far as I'm aware—by . . . the assessor for purposes of identifying the property.

¶ 62. In their stipulation, the parties recognized the distinct possibility that the record might be inadequate for a reviewing court to reach the conclusion the majority does, that Spiegelberg's appraisal is admissible evidence as a matter of law and the DOT's is not. One of the few paragraphs in the stipulation representing the substance of the parties' agreement provides as follows:

If, upon appeal it is determined insufficient facts exist to establish the correct jury instructions and special verdicts for the damage analysis before and after the taking, the matter will be remanded to the circuit court for further proceedings consistent with the ruling by the appellate court.

¶ 63. Indeed, Spiegelberg even concedes in her brief that the only information in the record as to the most advantageous use is contained in the appraisal reports. She also recognizes that a remand for further factual development is necessary if an inquiry into most advantageous use is required:

Other than what the appraisers describe as the Highest and Best Use, *the record contains no information about what might be the most advantageous use for the subject property.* The only thing addressed at the hearing was the existing use. *The trial court was obviously not concerned about this issue since it reached its ruling without making any inquiry about the most advantageous use.* Spiegelberg also contends that the ruling by the trial court and the position which it supports in this

case does not rely upon such a determination. *In the event this Court, though, believes that a ruling on this issue does require an inquiry into the most advantageous use for the subject property, then this case will need to be remanded to the trial court for testimony on that use.*

(Emphasis added.)

¶ 64. The final statement from this passage in Spiegelberg's brief is sage advice. The majority should have followed it.

¶ 65. At oral argument Spiegelberg reiterated this passage from her brief, in response to questioning about the lack of an evidentiary hearing, adequate record, or circuit court determination as to the issue of most advantageous use. Counsel for Spiegelberg said: "I understand that and it's partly because of what you're addressing right now why I put that passage in our papers *because I can certainly see the court having a question about that.*" (Emphasis added.) Similarly, when asked what rule should result from this case, counsel said:

The rule would be one where this court would recognize the smallest legal division that's possible . . . *provided that there was an inquiry into the highest and best use, and that that subdivision was consistent with that highest and best use.*

(Emphasis added.)

¶ 66. Unlike the majority, I recognize that the record is inadequate for this court to meaningfully apply the proper legal standards. We cannot determine with any confidence whether Spiegelberg's proposed use of the land as separate parcels is "reasonably probable" and not "speculative." *Clarmar,* 129 Wis. 2d at 92. On this record we cannot determine whether the

633

proposed use is the "most advantageous use but only such use as actually affects the *present* market value." Section 32.09(2) (emphasis added). The circuit court, not this court, should resolve the factual disputes raised by the parties' appraisal reports as to the most advantageous use. Additional proceedings are necessary to determine whether the individual characteristics and unique qualities of the property should preclude either Spiegelberg's valuation approach or the DOT's.

¶ 67. I would therefore reverse the circuit court and remand for further proceedings. At those proceedings, the circuit court could apply the proper legal standards after Spiegelberg has an opportunity to introduce evidence to support her theory that her proposed use of the property is the most advantageous use and is reasonably probable. "If an owner of land wishes to assert that the land being taken in eminent domain is not at the present time being used at its highest potential, *it is incumbent upon [the owner] to establish this fact.*" Julius L. Sackman, 4 *Nichols on Eminent Domain* § 12B.14, at 12B-139 – 12B-140 (3d ed. 2005) (emphasis added).

¶ 68. Ultimately the majority's analysis is unsatisfying at best. On the inadequate record before us, the proper legal standards simply cannot be meaningfully applied. I therefore respectfully dissent.

¶ 69. I am authorized to state that Chief Justice SHIRLEY S. ABRAHAMSON joins this dissent.