CITY OF MILWAUKEE, Petitioner-Respondent,†

v.

ROADSTER LLC, Respondent,

C. COAKLEY RELOCATION SYSTEMS, INC., Respondent-Appellant.

Court of Appeals

*No. 02–3102. Submitted on briefs April 1, 2003.—Decided May 13, 2003.*

2003 WI App 131

(Also reported in 666 N.W.2d 524.)

† Petition to review denied 8-13-03.

On behalf of the respondent-appellant, the cause was submitted on the briefs of *Alan Marcuvitz* and *Andrea Roschke* of *Weiss Berzowski Brady LLP* of Milwaukee.

On behalf of the petitioner-respondent, the cause was submitted on the brief of *Charles P. Graupner* and *Reince R. Priebus* of *Michael Best & Friedrich LLP*, and *Harry A. Stein*, assistant city attorney of Milwaukee.

Before Wedemeyer, P.J., Schudson and Curley, JJ.

¶ 1. WEDEMEYER, P.J. C. Coakley Relocation Systems, Inc. appeals from a final order granting a writ of assistance to the City of Milwaukee to remove Coakley from occupancy of a .176 acre parcel of property located at 1253 North Old World Third Street, Milwaukee, Wisconsin, which it used for employee and customer parking in conjunction with the operation of its business.

¶ 2. Coakley claims the trial court erred as a matter of law when it issued the writ of assistance without requiring the City to make available comparable replacement property based on the trial court's conclusions that Coakley did not qualify as a "displaced person" under WIS. STAT. § 32.19(2)(e) (2001–02),[1] or as a "tenant-occupant" under WIS. ADMIN. CODE § COMM 202.01(41). Because Coakley satisfies both the definition of "displaced person" and of "tenant-occupant" of the property, we reverse.

---

[1] All references to the Wisconsin Statutes are to the 2001–02 version unless otherwise noted.

## BACKGROUND

¶ 3. The property, which is the subject of this appeal, is a portion of an entire parcel of land acquired by the City of Milwaukee through its power of eminent domain to create a new street design warranted by the demolition of the Park East Freeway in downtown Milwaukee. At the time of the taking, Roadster LLC was the owner of the entire parcel. The subject of this appeal (the property) is a parcel used for parking, with frontage on the west side of North Old World Third Street and the south side of West McKinley Avenue.

¶ 4. In 1998, Roadster acquired the entire parcel from Lappin Electric Company. Lappin's building was located on the north side of West McKinley Avenue, as was its truck parking. Lappin used the subject property located on the south side of West McKinley Avenue for customer and employee parking.

¶ 5. When Roadster purchased the entire parcel, it leased most of the building and truck parking located on the north side of West McKinley Avenue to Coakley. In addition, Coakley leased seventeen of twenty-two available parking spaces on the property located on the south side of West McKinley Avenue for employee and customer use. When the City acquired the property relative to the Park East Freeway project, Coakley lost its customer and employee parking spaces.

¶ 6. Prior to applying for a writ of assistance, the City did not make a comparable replacement property available to Coakley. The City claimed that Coakley did not qualify for this relocation benefit afforded under WIS. STAT. § 32.05(8)(c). The controversy was submitted to the trial court on a stipulated statement of facts. The trial court agreed with the position of the City. It determined that Coakley was not engaged in business

on the property and, therefore, Coakley was not a "displaced person." The trial court further concluded that Coakley's use of the property did not meet the definition of a tenant-occupant business under WIS. ADMIN. CODE § COMM 202.01(41) because it conducted no business on the property. As a result, the trial court issued the writ of assistance. Coakley now appeals.

## ANALYSIS

¶ 7. Coakley claims the trial court erred when it ruled that the City was not obligated to provide Coakley with a comparable replacement property before it could take occupancy under the writ of assistance. Our review of the trial court's decision necessitates the application of WIS. STAT. §§ 32.05(8) and 32.19(2)(e), and WIS. ADMIN. CODE §§ COMM 202.01(14)(a) and 202.01(41), to the stipulated statement of facts. Statutory construction presents a question of law, which we review independently. *Town of Sheboygan v. City of Sheboygan*, 150 Wis. 2d 210, 212, 441 N.W.2d 752 (Ct. App. 1989). When the language of a statute or administrative rule is unambiguous, we afford the pertinent language its ordinary and accepted meaning. *State ex rel. Nekoosa Papers, Inc. v. Board of Review*, 114 Wis. 2d 14, 17, 336 N.W.2d 384 (Ct. App. 1983). "The statutes governing condemnation action procedures are in derogation of the common law and therefore are to be strictly construed." *City of Racine v. Bassinger*, 163 Wis. 2d 1029, 1037, 473 N.W.2d 526 (Ct. App. 1991).

¶ 8. There are three conditions precedent, which must exist before a trial court can issue a writ of assistance: (1) compliance with jurisdictional require-

ments; (2) payment or tender of the award; and (3) making available comparable replacement property to the occupants. *Id.* at 1035. Coakley challenges the City's action under only the third requirement. The granting of a writ of assistance by a trial court in eminent domain actions is governed by WIS. STAT. § 32.05(8), which reads in pertinent part:

> (b) . . . The condemnor has the right to possession when the persons who occupied the acquired property . . . hold over beyond the vacation date established by the condemnor . . . . If the condemnor is denied the right of possession, the condemnor may, upon 48 hours' notice to the occupant, apply to the circuit court where the property is located for a writ of assistance to be put in possession. The circuit court shall grant the writ of assistance if all jurisdictional requirements have been complied with, if the award has been paid or tendered as required and if the condemnor has made a comparable replacement property available to the occupants, except as provided under par. (c).

> (c) *The condemnor may not require the persons who occupied the premises on the date that title vested in the condemnor to vacate until a comparable replacement property is made available. This paragraph does not apply to any person* who waives his or her right to receive relocation benefits or services under s. 32.197 or *who is not a displaced person, as defined under s. 32.19 (2) (e),* unless the acquired property is part of a program or project receiving federal financial assistance.

(Emphasis added.)

¶ 9. Pertinent parts of WIS. STAT. § 32.19(2) read:

> (e) 1. "Displaced person" means, except as provided under subd. 2., any person who moves from real property or who moves his or her personal property from real property:

a. As a direct result of a written notice of intent to acquire or the acquisition of the real property, in whole or in part or subsequent to the issuance of a jurisdictional offer under this sub-chapter, for public purposes; or

b. As a result of rehabilitation, demolition or other displacing activity, as determined by the department of commerce, if the person is a tenant-occupant of a dwelling, business or farm operation and the displacement is permanent.

2. "Displaced person" does not include:

. . . .

b. Any person, other than a person who is an occupant of the property at the time it is acquired . . . .

¶ 10. The parallel provisions of the administrative code are WIS. ADMIN. CODE §§ COMM 202.01(14)(a) and 202.01(41):

(14) (a) "Displaced person" means any person who moves from real property or moves personal property from real property:[2]

1. As a direct result of a written notice of intent to deny possession or use of rented property or to purchase real property, the initiation of negotiations for, or the purchase of, such real property by a displacing agency, in whole or in part, for a public project . . . .

. . . .

(41) "Tenant-occupant, business", means . . . a person who is tenant-owner and operator of a business or farm operation which was conducted on the property

---

[2] WIS. ADMIN. CODE § Comm 202.01(29) defines "Person" as including a corporation.

for at least one year before initiation of negotiations or the date of vacation when given a notice of displacement from the agency, whichever is earlier.

¶ 11. The trial court concluded that under WIS. STAT. § 32.19(2)(e), Roadster and Coakley were not "displaced persons." It further concluded that the property located on the south side of West McKinley Avenue and leased by Coakley did not fulfill the definition of a tenant-occupant business under WIS. ADMIN. CODE § COMM 202.01(41) because Coakley did not conduct its business in the parking lot.

¶ 12. Coakley contends it was entitled to a comparable replacement property before the issuance of a writ of assistance because, under the applicable statutes and administrative rules, it was a "displaced person" and an "occupant" of the property. The City responds that because Coakley did not conduct business on, or physically occupy, the property, it did not fall under the definition of an "owner-occupied business, tenant-occupied business" or a "displaced person." As a result, the City concludes that Coakley was not entitled to comparable replacement property. The trial court agreed with the City.

¶ 13. Coakley argues that its status as a "displaced person" is determined by a reasonable reading of the clear language of WIS. STAT. § 32.19(2)(e)1, which states that a displaced person is "any person who moves from real property or who moves his or her personal property from real property: . . . As a direct result of a written notice of intent to acquire or the acquisition of the real property, in whole or in part . . . for public purposes . . . ." Its status, Coakley also contends, is further defined by a reasonable reading of WIS. ADMIN.

525

CODE § COMM 202.01(14)(a)1, which declares that a displaced person is "any person who moves from real property or moves personal property from real property: . . . As a direct result of a written notice of intent to deny possession or use of rented property . . . by a displacing agency, in whole or part, for a public project." Coakley was forced to give up its leasehold interest in the property and move its vehicle parking. Thus, argues Coakley, it is a "displaced person." We conclude that Coakley's interpretation reflects a reasonable reading of the statute; thus, Coakley satisfies both the statutory definition of "displaced person" and the administrative code provisions of "tenant-occupant."

¶ 14. The City disagrees with Coakley's interpretation for two reasons. First, the City contends that Coakley does not satisfy the definition of a displaced person under WIS. STAT. § 32.19(2)(e)2.b (a displaced person "does not include: . . . Any person, other than a person who is an occupant of the property at the time it is acquired . . . ."). It argues that Coakley was not an "occupant" of the property because it did not occupy the parking spaces. Second, the City argues that Coakley does not satisfy the definition of "tenant-occupant" in WIS. ADMIN. CODE § COMM 202.01(41) ("'Tenant-occupant . . .'" [is] a person who is a tenant-owner and operator of a business . . . which was conducted on the property . . . ."). Again, the City suggests that Coakley did not operate its business in the parking spaces. Thus, the City concludes Coakley is not a "displaced person" under the statute. The City contends that *Bassinger* "is completely dispositive of this appeal." We reject the City's contention for two reasons.

¶ 15. First, *Bassinger* involved a marina business limited to the rental of property for boat storage and docking and related services. *Id.*, 163 Wis. 2d at 1032.

The Bassingers were the owners of the business but they did not physically occupy the marina facility. *Id.* at 1033. This court examined whether they were "displaced persons" entitling them to comparable replacement property under WIS. ADMIN. CODE § COMM 202.01(14)(b)10, which disqualifies a person from displaced status if the person "is a non-occupant owner of commercial . . . property that is rented to others . . . ." The crucial factor in our decision was the circumstance of absentee-landlordism. *Bassinger,* 163 Wis. 2d at 1042–43. We declared: "Owners of rental property who do not physically occupy the real property taken for public use are ineligible for business replacement payments under sec. 32.19(4m) . . . ." *Id.* at 1043.

¶ 16. Here, we are not examining a situation of an absentee-owner, but rather one of a physically present, business-owner tenant. This distinction is significant. The rule annunciated in *Bassinger* would control only if Roadster, the owner non-occupant of the property, sought entitlement to comparable replacement property. Accordingly, the City's argument that *Bassinger* controls is faulty and, as a result, offers no authority to support its contention.

¶ 17. Second, as part and parcel of its contention that Coakley does not qualify as a "displaced person," the City asserts that Coakley, as a business entity, does not conduct business on the property and therefore it does not occupy the property. In advancing this argument, the City attempts to carve out a constituent part of Coakley's operation from the total business entity and, in doing so, renders the parking facility separate, distinct and unrelated. Such a conclusion, however, would fail to account for countless multi-sited businesses, which may be divided by public thoroughfares, green spaces and other socially desirable buffer-zones.

To suggest that parking lots, separated from buildings by such amenities or buffer-zones, are not part of the business occupancy is contrary to common sense. Accordingly, the parking lot that is intended to serve customers and employees of a company which holds a lease to a larger parcel must be considered "occupied" by the business it is obviously intended to serve. The conclusion ought to be the same whether the lot is across the street from, or adjacent to, the building housing the business.

¶ 18. This unity-of-interest concept is consistent with our supreme court's declaration: "Where two or more distinct parcels (at least when owned by the same person) are used as a unit, the parcels may be treated as one and the taking of part or all of one of them treated as a partial taking of the combined whole." *Jonas v. State*, 19 Wis. 2d 638, 642, 121 N.W.2d 235 (1963). This unity-of-interest concept lends further support for the conclusion that the property under examination was occupied by Coakley. Because the property was a parking lot used by Coakley's employees and customers to access the business, it was an essential portion of Coakley's business the City "took" away. Coakley was forced to relocate its business because it no longer had a place for employees and customers to park.

¶ 19. For the foregoing reasons, Coakley was not excluded from the status of a "displaced person" and, therefore, is entitled to a comparable replacement property before the writ for restitution may be ordered.

*By the Court.*—Order reversed.