PER CURIAM.
¶1 Sacred Heart Hospital of the Hospital Sisters of the Third Order of St. Francis ("Sacred Heart") appeals an order denying its motion for a temporary injunction and a grant of summary judgment in favor of Marshfield Clinic Health System, Inc. ("MCHS"); Marshfield Clinic, Inc. ("Marshfield Clinic"); and MCHS Hospitals, Inc. ("MCHS Hospitals") (collectively, the "Marshfield Entities"). Sacred Heart argues the circuit court erred by dismissing its claims for breach of a right of first refusal and of a land use restriction associated with lands Sacred Heart sold to Marshfield Clinic at various times. Sacred Heart also challenges the dismissal of its claim for breach of the implied duty of good faith and fair dealing and the denial of its motion for a temporary injunction. We reject each of its arguments and affirm.
BACKGROUND
¶2 Sacred Heart is a nonprofit Wisconsin corporation that provides healthcare services to the Chippewa Valley community, including through a hospital located in Eau Claire. MCHS, Marshfield Clinic, and MCHS Hospitals are affiliated nonprofit Wisconsin corporations that also provide healthcare services.[1] Since 1987, Sacred Heart and the Marshfield Entities have collaborated in certain limited capacities in providing healthcare services.
¶3 In late 1997, Sacred Heart and Marshfield Clinic entered into a Real Estate Purchase and Sale Agreement (the "1997 Agreement"). Under the 1997 Agreement, Sacred Heart agreed to sell to Marshfield Clinic 6.04 acres of vacant real property near Sacred Heart's existing hospital. As part of the 1997 Agreement, Marshfield Clinic agreed to enter into a later-recorded "Declaration of Land Use Restriction and Grant of Right of First Refusal and Option" (the "1998 Declaration"). Among other things, the 1998 Declaration granted Sacred Heart a right of first refusal to purchase any portion of the real property subject to the 1997 Agreement for which Marshfield Clinic received an offer to purchase. Marshfield Clinic subsequently built a clinic and pharmacy on the land it purchased from Sacred Heart, which the parties refer to as the "Clinic Parcel."
¶4 Also in 1997, Marshfield Clinic purchased a 2.58-acre parcel of vacant land adjacent to and immediately south of the Clinic Parcel. The property was purchased from the Eau Claire McGuire Agency and is known as the "McGuire Parcel." Sacred Heart has not, at any time, held title to or had any other legal interest in the McGuire Parcel. The Clinic Parcel and the McGuire Parcel were combined into a single parcel in 2006.
¶5 In 2006, Marshfield Clinic entered into discussions with Sacred Heart about purchasing an additional amount of Sacred Heart's real estate, which the parties refer to as the "Parking Lot Parcel." The real property at issue was a 6.8-acre lot located directly across Craig Road to the east of the existing clinic. Marshfield Clinic documented its plans to construct an addition to the existing clinic, including an ambulatory surgery center and an imaging center, but it advised Sacred Heart that the addition would not be built to hospital specifications and it did "not intend to operate a licensed hospital as part of [its] operations on th[e] site." Marshfield Clinic stated it was interested in the lot to provide additional parking for the clinic.
¶6 Sacred Heart accepted Marshfield Clinic's offer to purchase the Parking Lot Parcel in May 2006 (the "2006 Agreement"). As part of the sale, the parties entered into a "Declaration of Land Use Restriction" in June 2006 (the "2006 Declaration"). Among other things, the 2006 Declaration prohibited Marshfield Clinic and its successors-in-interest from "construct[ing], locat[ing], operat[ing], or provid[ing]" a hospital "on or from" the Parking Lot Parcel.
¶7 Ten years later, in 2016, MCHS Hospitals purchased real property from Gateway Properties Midwest, LLC, for the purpose of constructing a cancer center and hospital (the "Hospital Parcel"). The 7.23-acre Hospital Parcel is located immediately to the south of the McGuire Parcel, and across Craig Road to the west of the Parking Lot Parcel. Later, MCHS publicly announced that it had submitted a site plan to the City of Eau Claire for a proposed forty-four-bed hospital on the Hospital Parcel.
¶8 Marshfield Clinic and MCHS Hospitals executed certain agreements in preparation for the construction of the hospital and cancer center. In January 2017, Marshfield Clinic and MCHS Hospitals entered into a "Cross Access and Parking Agreement" (the "Parking Agreement"), which the City of Eau Claire required as a condition for its approval of the site plan for the cancer center. The Parking Agreement granted to MCHS Hospitals a non-exclusive easement permitting cancer center staff and visitors to use portions of what the parties designated the "Marshfield Parcel."[2] The "Marshfield Parcel," according to the legal description provided, is apparently synonymous with the McGuire Parcel. See infra ¶ 20 n.5. It is undisputed that the Parking Agreement does not provide MCHS Hospitals with any access or parking rights on the Clinic Parcel or Parking Lot Parcel. The easement area affected by the Parking Lot Agreement exists entirely within the McGuire Parcel.
¶9 Marshfield Clinic and MCHS Hospitals also executed a "Drainage Easement Agreement (the "Drainage Agreement") at the City of Eau Claire's request. The Drainage Agreement provided MCHS Hospitals with the rights to construct a drainage system and discharge water from the Hospital Parcel onto certain areas of the "Marshfield Parcel." However, like the Parking Agreement, the Drainage Agreement does not provide MCHS Hospitals with any right to use the Clinic Parcel or the Parking Lot Parcel. The easement area affected by the Drainage Agreement exists entirely within the McGuire Parcel. The following map, excerpted from a record exhibit, shows all the parcel designations and their configuration, as well as the easement area:
?
Sacred Heart's hospital is located on property just east of the properties depicted in the map.
¶10 In March 2017, Sacred Heart filed this action, asserting claims for declaratory judgment, breach of contract, and breach of the implied duty of good faith and fair dealing. Sacred Heart asserted that Marshfield Clinic's granting of parking and drainage rights over the "Marshfield Parcel" constituted a "transfer" of property, thereby triggering Sacred Heart's right of first refusal with respect to the Clinic Parcel. Accordingly, Sacred Heart asserted Marshfield Clinic had breached the 1998 Declaration by failing to offer Sacred Heart a right of first refusal for the easements on the McGuire Parcel adjacent to the Clinic Parcel. Sacred Heart also claimed the Marshfield Entities' expanded campus-now consisting of the existing clinic, the cancer center, and the hospital-would require no less than 844 parking spaces, and it was inevitable that the Marshfield Entities would satisfy this parking demand through the use of the Parking Lot Parcel. Sacred Heart therefore asserted that the Marshfield Entities' "plans to build a hospital and cancer center on the [Hospital Parcel] will necessarily cause it to violate" the 2006 Declaration's land use restriction. Finally, Sacred Heart alleged the Marshfield Entities' decision to build a hospital was in bad faith and contrary to the parties' intentions when they entered into the 2006 Agreement. As relief, Sacred Heart requested that the circuit court permit it to exercise its right of first refusal over the parking and drainage easements, and to either order rescission of the 2006 Agreement transferring the Parking Lot Parcel or award damages for Marshfield Clinic's breach of that agreement.
¶11 Sacred Heart filed a motion for a temporary injunction halting construction of the cancer center and hospital. The Marshfield Entities then moved for summary judgment on all of Sacred Heart's claims. The circuit court denied Sacred Heart's motion for a temporary injunction and granted the Marshfield Entities' summary judgment motion, dismissing all of Sacred Heart's claims. Sacred Heart now appeals.
DISCUSSION
¶12 We review a grant of summary judgment de novo. Tews v. NHI, LLC , 2010 WI 137, ¶ 40, 330 Wis. 2d 389, 793 N.W.2d 860. The summary judgment methodology is well established. Id. , ¶ 41. We first examine the pleadings to determine whether claims have been stated. Id. If so, we examine the moving party's submissions to determine whether it has made a prima facie case for summary judgment. Id. If a prima facie case for summary judgment exists, we examine the opposing party's affidavits and other proof to determine whether summary judgment is appropriate. Id.
¶13 Summary judgment must be granted when there is no genuine dispute of any material fact and the moving party is entitled to judgment as a matter of law. WIS. STAT. § 802.08(2) (2015-16).[3] "The purpose of the summary judgment procedure is to avoid trials when there is nothing to try." Tews , 330 Wis. 2d 389, ¶ 42. In reviewing the parties' submissions, we draw all reasonable factual inferences in the light most favorable to the nonmoving party. Pum v. Wisconsin Physicians Serv. Ins. Corp. , 2007 WI App 10, ¶ 6, 298 Wis. 2d 497, 727 N.W.2d 346. Whether an inference is reasonable and whether more than one inference may be drawn are questions of law. Id.
A. The circuit court properly dismissed Sacred Heart's claims related to the right of first refusal in the 1998 Declaration.
¶14 We begin with Sacred Heart's assertion that Marshfield Clinic's conveyance of easements to MCHS Hospitals for parking and drainage over the McGuire Parcel triggered Sacred Heart's right of first refusal. "A right of first refusal is a contractual right to be first in line should the opportunity to purchase or lease a property arise." MS Real Estate Holdings, LLC v. Donald P. Fox Family Tr. , 2015 WI 49, ¶ 24, 362 Wis. 2d 258, 864 N.W.2d 83. The right of first refusal exists in an "unripened" or "suspended state," awaiting the "energizing spark" provided when the condition precedent of intent and offer is met. Id. Ascertaining the rights granted by a right of first refusal, as well as the extent of those rights, is an exercise in contract interpretation, which we review de novo. Nature Conservancy of Wis., Inc. v. Altnau , 2008 WI App 115, ¶ 6, 313 Wis. 2d 382, 756 N.W.2d 641.
¶15 The 1998 Declaration contains, in relevant part, the following language with respect to the right of first refusal:
If [Marshfield Clinic] ever receives an offer to purchase all or any portion of the Property or other document involving the transfer of any Interest in the Property which [Marshfield Clinic] desires to accept or enter into (in any such case, an "Offer"), [Marshfield Clinic] will provide [Sacred Heart] with written notice of any such Offer, including all material terms thereof. [Sacred Heart] shall have thirty (30) days after receipt of such notice to decide whether to purchase the Property or any portion thereof on the same terms and conditions contained in the subject Offer.
The "Property" to which the right of first refusal applies is only the Clinic Parcel that was the subject of the 1997 Agreement. Indeed, as to the adjacent McGuire property, the 1998 Declaration states:
For purposes of the right of first refusal granted in this Section 2, if the Offer includes all or any part of the adjacent parcel to the south of the Property, [the McGuire Parcel], then [Sacred Heart's] right to exercise its right of refusal is conditioned upon [Sacred Heart] purchasing such additional property as well.
(Emphasis added.)
¶16 Sacred Heart does not contend that any interests in the Clinic Parcel were conveyed to MCHS Hospitals by virtue of the Parking Agreement or Drainage Agreement. Rather, Sacred Heart argues that its right of first refusal "can be read to extend to the McGuire Parcel." Sacred Heart appears to argue that the provisions of the 1998 Declaration quoted above, when read in conjunction, establish that the right of first refusal extends to "whichever parcel was affected" by the receipt of an offer to transfer an interest in the property, be it the Clinic Parcel or the McGuire Parcel. Sacred Heart suggests that the reference to the right of first refusal being granted generally in "Section 2" of the 1998 Declaration, followed by the text relating to offers that also involve the McGuire Parcel, "undercuts the notion that an 'Offer' must involve the Clinic Parcel."
¶17 Sacred Heart's interpretation is contrary to the plain language of the 1998 Declaration's right of first refusal. The right triggers only upon Marshfield Clinic receiving an offer or other document that it wishes to accept that would accomplish a sale or transfer of an interest in the "Property." Sacred Heart concedes that the term "Property" in the 1998 Declaration refers to the Clinic Parcel. Regardless of Marshfield Clinic's subsequent consolidation of the Clinic and McGuire Parcels, the right of first refusal applies only to interests in the land that was sold pursuant to the 1997 Agreement-i.e., the Clinic Parcel. Absent an offer to purchase or transfer of an interest in the Clinic Parcel, Sacred Heart could not obtain any right of first refusal pursuant to the 1998 Declaration, including over property in the McGuire Parcel.
¶18 Consequently, even assuming arguendo that the easements granted by Marshfield Clinic accomplished a "transfer of an[ ] Interest[ ]" under the 1998 Declaration, the easement grants did not implicate Sacred Heart's right of first refusal over the Clinic Parcel. There is no evidentiary basis for the proposition that the parking and drainage easements were granted over any area other than the McGuire Parcel. Indeed, Sacred Heart appears to concede that the easement grants are limited by their plain terms to a portion of the McGuire Parcel.
¶19 Nonetheless, Sacred Heart argues its right of first refusal has been triggered because there will be an inevitable secondary effect on the Clinic Parcel as a result of the Parking and Drainage Agreements. Specifically, Sacred Heart asserts that hospital patients and staff will use parking areas on the Clinic Parcel because Marshfield Clinic has no intention to erect barriers between the parking areas of the McGuire and Clinic Parcels, and because the Marshfield Entities promote the area as a single medical campus. Sacred Heart further claims the Clinic Parcel will be impacted by the Drainage Agreement because surface water from the McGuire Parcel might flow onto the Clinic Parcel. Wisconsin subscribes to the "reasonable use rule" as it pertains to surface water drainage onto adjacent land, under which only unreasonably harmful interference with surface water flow is actionable. See Hocking v. City of Dodgeville , 2009 WI 70, ¶ 18, 318 Wis. 2d 681, 768 N.W.2d 552. Because of this rule, Sacred Heart reasons that Marshfield Clinic has "given up at least some rights" in the Clinic Parcel-apparently the right to object to a presumed increase in surface water flow as a result of the Drainage Agreement that nonetheless falls short of the "unreasonable interference" standard.[4] (Blue 47)
¶20 This reasoning is far too attenuated from the plain language of the 1998 Declaration's right of first refusal, and Sacred Heart cannot withstand summary judgment based on its tenuous reasoning alone. Sacred Heart's claim that the Hospital Parcel's patients and staff will use the Clinic Parcel as "de facto parking" without permission is entirely speculative.[5] See Park Ave. Plaza v. City of Mequon , 2008 WI App 39, ¶ 24, 308 Wis. 2d 439, 747 N.W.2d 703 (observing that a party cannot defeat summary judgment by relying on unsubstantiated conclusions and speculation). Nor is there any record support for the proposition that there will be an increase in surface water flowing onto the Clinic Parcel as a result of the Drainage Agreement. In any event, and most important, in neither instance has there been any "offer" to transfer any property interest in the Clinic Parcel. By the plain language of the 1998 Declaration, the right of first refusal is not triggered upon patients or visitors trespassing upon the Clinic Parcel, nor is it triggered by an additional flow of surface water onto the Clinic Parcel.
¶21 In so holding, we recognize that the circuit court granted summary judgment on Sacred Heart's right of first refusal claims based on the court's conclusion that a third-party offer to purchase or lease was necessary to trigger Sacred Heart's right. It is not necessary for us to address the circuit court's reasoning because we conclude there is no evidence that the easement rights granted in the McGuire Parcel implicate, in any way, the right of first refusal granted to Sacred Heart as to the Clinic Parcel. We therefore affirm, albeit on grounds different from those relied upon by the circuit court. See Vanstone v. Town of Delafield , 191 Wis. 2d 586, 595, 530 N.W.2d 16 (Ct. App. 1995). We also need not address the Marshfield Entities' assertion that any right of first refusal Sacred Heart had vis-à-vis the parking and drainage easements could not be exercised because there was no reasonable chance of completing the transaction. See Turner v. Taylor , 2003 WI App 256, ¶ 1 n.1, 268 Wis. 2d 628, 673 N.W.2d 716 (observing the court of appeals need not address all issues when one issue is dispositive).
B. The circuit court properly dismissed Sacred Heart's claims related to the land use restrictions contained in the 2006 Declaration.
¶22 The 2006 Declaration contains a land use restriction. It provides, in relevant part, that:
Neither Declarant [Marshfield Clinic] nor any other Governed Person shall construct, locate, operate, or provide on or from Declarant's Property [the Parking Lot Parcel] (including any improvements to or located at or upon the Declarant's Property) any Hospital, but this restriction shall not apply to an Ambulatory Surgery Center or Ambulatory Surgery Center Services.
The 2006 Declaration specifically defines a "Hospital" as "any Person, building, structure, institution or place that has received a certificate of approval to operate as a 'Hospital' or 'Critical access hospital' by the State of Wisconsin pursuant to [ WIS. STAT. ch. 50 or successor laws]."[6]
¶23 A restrictive covenant is a negative covenant that limits the permissible uses of land. Forshee v. Neuschwander , 2018 WI 62, ¶ 15, 381 Wis. 2d 757, 914 N.W.2d 643. Land use restrictions are strictly construed to favor the unencumbered and free use of property. Id. , ¶ 16. In resolving contests about the meaning of a restrictive covenant, we focus not on the parties "amorphous general intent." Id. , ¶ 17. Rather, "we determine the meaning of the restriction by the words actually used." Id. Restrictive covenants must be expressed in clear, unambiguous and peremptory terms, id. , ¶ 16, and any ambiguity in the words employed will be resolved in favor of the free use of property, id. , ¶ 17. The interpretation of a restrictive covenant is a question of law that we review independently. Id. , ¶ 14.
¶24 Sacred Heart argues that Marshfield Clinic has (or will) violate the restrictive covenant contained in the 2006 Declaration by using the Parking Lot Parcel to provide visitor, staff and other parking related to the hospital located on the separate Hospital Parcel across Craig Road. It notes that cases from other jurisdictions, as well as some Wisconsin case law, support the proposition that "providing parking for a business located elsewhere is materially indistinguishable from operating the business itself on the restricted parcel." "In short," reasons Sacred Heart, "because parking is an essential or integral part of a business' operations, the use of a restricted parcel for parking that serves an off-parcel business that falls within the terms of the restriction is prohibited" just as if the business itself was located on the parcel. The Marshfield Entities, on the other hand, accuse Sacred Heart of attempting to transform the land use restriction into a competitive use restriction, and they argue there is no record support for Sacred Heart's assertion that the use of the Parking Lot Parcel is an "essential or integral part" of the hospital's operations.
¶25 As far as Wisconsin authority goes, Sacred Heart primarily relies on City of Milwaukee v. Roadster, LLC , 2003 WI App 131, 265 Wis. 2d 518, 666 N.W.2d 524. The issue in Roadster was whether a business tenant was a "displaced person" so as to require the City of Milwaukee to make available comparable replacement property for a parking lot serving the business that had been acquired by the government for a freeway project. See id. , ¶¶ 2, 5-6. The City argued that to qualify for comparable replacement property, the business itself had to be conducted on the property; a parking lot serving a business located elsewhere was insufficient. Id. , ¶ 12. We rejected that argument as "contrary to common sense:" "[T]he parking lot that is intended to serve customers and employees of a company which holds a lease to a larger parcel must be considered 'occupied' by the business it is obviously intended to serve." Id. , ¶ 17. We concluded that the parking lot customers used to access the business was an "essential portion" of the business that the City took away, and therefore the tenant business was entitled to comparable replacement property. Id. , ¶¶ 18-19.
¶26 We pause momentarily to observe that the land use restriction here does not, by its plain terms, prohibit uses of the Parking Lot Parcel that are an "essential or integral part" of a hospital facility. The restriction in the 2006 Declaration prohibits Marshfield Clinic (as well as others subject to the restriction) from "construct[ing], locat[ing], operat[ing] or provid[ing]" any hospital "on or from" the Parking Lot Parcel. The meaning of those terms, as well as the significance of the "on or from" language, is contested by the parties. We need not resolve that dispute because, even if the interpretation of the restrictive covenant Sacred Heart advances is correct, the Marshfield Entities are entitled to summary judgment.
¶27 To be specific, assuming for the sake of argument that the restrictive covenant here prohibits uses that are an "essential or integral part" of a hospital facility, and further assuming that parking for an offsite facility can fall within that category of uses, we nonetheless conclude, under our de novo review, that Sacred Heart's breach claim fails on this summary judgment record. There is no evidence from which a reasonable factfinder could conclude that, under the circumstances here, the availability of parking on the Parking Lot Parcel is essential to the hospital's operation.
¶28 It is undisputed that parking spaces for the hospital will be required under the City of Eau Claire's ordinances and regulations. However, Sacred Heart attempts to manufacture the required "necessity" of the Parking Lot Parcel to the hospital's operations. First, Sacred Heart, citing the Marshfield Entities' desire to promote the area as one medical campus, groups the entire area together to claim that "without the Parking Lot Parcel, the number of parking spots available [would be] nowhere near sufficient to fill the needs of the campus." After assessing the campus's collective parking needs (which Sacred Heart estimates to be 739 parking spaces), Sacred Heart declares that "the practical requirements" of the campus will be much greater, and the Clinic, McGuire and Hospital parcels contain only 410 proposed parking spaces. Sacred Heart therefore argues it is "self-evident" and "inevitable" that hospital staff, patients, visitors and suppliers will be "forced to use the Parking Lot Parcel."
¶29 None of the foregoing demonstrates, or even provides a reasonable inference, that, but for the availability of parking on the Parking Lot Parcel, the hospital could not be built or operate. Indeed, in its reply brief, Sacred Heart concedes that city ordinances will not compel the Marshfield Entities to use the Parking Lot Parcel for hospital parking. Sacred Heart's argument that the hospital will need the spaces located on that parcel is based upon its own assessment of the minimum parking needs of the entire campus , not merely the hospital. The Marshfield Entities, on the other hand, assert that with respect to the Hospital Parcel, there is "more than sufficient parking available" to support both the initial and expansion phases of the hospital without use of the Parking Lot Parcel. Notably, Sacred Heart does not directly refute this assertion.
¶30 Instead, Sacred Heart claims that there is sufficient information in the appellate record to create a genuine issue of material fact regarding the use of the Parking Lot Parcel to support the hospital. Sacred Heart cites project minutes from a construction meeting in which it is noted that "Marshfield Clinic is OK with construction personnel parking on the East staff lot, as long as it is on the far East side." Sacred Heart also cites what appears to be a traffic circulation diagram prepared in connection with the hospital plans showing a green line designated "Patient and Visitor Circulation." The green line follows Craig Road to the north and south and branches off with an arrow into the Parking Lot Parcel.
¶31 Neither of these items in the appellate record creates a genuine issue of material fact to be resolved by trial regarding the necessity of the Parking Lot Parcel to the hospital's operations, nor do they demonstrate that Marshfield Clinic has otherwise breached the 2006 Declaration. Sacred Heart has not directed this court to any evidence stating that the "East staff lot" referenced in the project minutes is synonymous with the Parking Lot Parcel. Similarly, there is no indication as to whether the "Patient and Visitor Circulation" in the traffic map refers solely to hospital patients and visitors, or to campus patients and visitors generally. Regardless, neither document creates a reasonable inference that the parking provided on the Parking Lot Parcel is an "essential or integral part" of the hospital operation.[7] Sacred Heart also ignores a fact it relied upon before the circuit court: that additional parking needs necessitated by an expanded campus could be met through the construction of a parking ramp on the Hospital Parcel. The circuit court therefore properly granted summary judgment on Sacred Heart's claim for breach of the 2006 Declaration.
C. The circuit court properly dismissed Sacred Heart's claim for breach of the implied duty of good faith and fair dealing related to the 2006 Agreement.
¶32 Every contract implies a duty of good faith and fair dealing between the parties to it. Runzheimer Int'l, Ltd. v. Friedlen , 2015 WI 45, ¶ 54, 362 Wis. 2d 100, 862 N.W.2d 879. Such duties arise because Wisconsin law disfavors following the letter, but not the spirit, of an agreement. Id. Put another way, the implied covenant of good faith and fair dealing is designed to prevent a party from complying with an agreement in form while "accomplishing exactly what the agreement of the parties sought to prevent." Foseid v. State Bank of Cross Plains , 197 Wis. 2d 772, 795-96, 541 N.W.2d 203 (Ct. App. 1995). Thus, "a party may be liable for breach of the implied contractual covenant of good faith even though all the terms of the written agreement may have been fulfilled." Id. at 796. However, when analyzing whether a breach of the implied duty of good faith and fair dealing has occurred, we look to the parties' objective expectations in entering the contract, rather than what they might subjectively have intended. Wilson v. Career Educ. Corp. , 844 F.3d 686, 689 (7th Cir. 2016). "[A] plaintiff must offer some evidence that the party accused of bad faith has actually denied the plaintiff the intended benefits of the contract." Betco Corp. v. Peacock , 876 F.3d 306, 310 (7th Cir. 2017).
¶33 Sacred Heart primarily relies on Market Street Associates Ltd. Partnership v. Frey , 941 F.2d 558 (7th Cir. 1991), as authority for its assertion that its good faith and fair dealing claim should survive summary judgment. In Market Street Associates , the Seventh Circuit bemoaned the "cryptic" nature of Wisconsin case law regarding the meaning of the implied duty of good faith. Id. at 593. In seeking to add flesh to the doctrinal skeleton, the federal court construed the duty as targeting "sharp dealing"-that is, conduct by a party seeking to take "deliberate advantage of an oversight by [the other] contract partner concerning his [or her] rights under the contract." Id. Sacred Heart relies on one passage in particular: " 'Good faith' is a compact reference to an implied undertaking not to take opportunistic advantage in a way that could not have been contemplated at the time of drafting, and which therefore was not resolved explicitly by the parties." Id. at 595.
¶34 Sacred Heart emphasizes that, at the time it agreed to sell the Parking Lot Parcel to Marshfield Clinic, Marshfield Clinic represented it had no plans to construct a hospital on that site. Sacred Heart claims that by "turning around and seeking to use the Parking Lot Parcel to support a new hospital, [the Marshfield Entities] undermined this objective of the bargain." And, Sacred Heart reasons, even if the parties did not explicitly prohibit the use of the Parking Lot Parcel for hospital parking, the Marshfield Entities are now seeking to take "opportunistic advantage" of the alleged fact that none of the parties contemplated the Marshfield Entities building a hospital on premises other than the Parking Lot Parcel. Sacred Heart also argues the Marshfield Entities have violated the spirit of the 1997 Agreement, as the parties "could not have contemplated" when drafting the right of first refusal "that someday [the Marshfield Entities] would attempt to artificially allocate the impact of a development that was so directly contrary to the represented plans of Marshfield and the manifest interests of Sacred Heart."
¶35 We are unpersuaded, either logically, legally or factually, by Sacred Heart's arguments regarding why its good faith and fair dealing claim should survive summary judgment. In particular, when considering whether to sell Marshfield Clinic the Parking Lot Parcel, Sacred Heart expressly contemplated the possibility that the Marshfield Entities would engage in a competitive endeavor by building a hospital. Consequently, Sacred Heart cannot reasonably argue that it could not have contemplated that Marshfield Clinic (or its related entities) would one day want to build a nearby hospital, especially when the Marshfield Entities already owned nearby real property on which they provided health care services.[8] See Market St. Assocs. , 941 F.2d at 595. Sacred Heart could have protected itself by conditioning the sale of land on Marshfield Clinic's promise that it would not construct a hospital within a specified distance of the Parking Lot Parcel, or that it would not engage in the offering of certain medical services, but instead it found the land use restriction discussed above sufficient to protect its interests. Permitting Sacred Heart now to pursue a claim for breach of the implied duty of good faith and fair dealing would be tantamount to rewriting the 2006 Agreement to include terms to which Marshfield Clinic did not agree and might never have agreed.
¶36 Similarly, we perceive no basis for a claim that Marshfield Clinic has violated the duty of good faith and fair dealing as to the 1997 Agreement. The only object of that contract was the sale of real property interests. By conditioning the sale upon Marshfield Clinic executing a right of first refusal, Sacred Heart merely contracted for the right to repurchase the property before all others. Sacred Heart does not explain how the Marshfield Entities' present desire to construct a nearby hospital interferes with that right, other than its passing reference to the potential use of the Clinic Parcel for off-site parking. For the reasons explained above, any such argument fails as being entirely speculative. That Sacred Heart may now regret selling the Clinic Parcel without additional restrictions is insufficient to support a cause of action for breach of the implied duty of good faith and fair dealing.
¶37 Moreover, the implied duty of good faith and fair dealing presupposes the existence of a valid and binding contract that is improperly frustrated. As the court in Market Street Associates astutely observed, the duty is minimized (if it exists at all) in the formation or negotiation stage of the contract, when the "parties confront each other with a natural wariness." Id. at 594-95. Tort remedies may be available if a party has engaged in fraud in an effort to lure an unsuspecting party into signing a contract, but Sacred Heart has not pursued any such claim here. Rather, the implied duty of good faith and fair dealing recognizes that after a contract is signed, the parties are in a "cooperative relationship the costs of which will be considerably reduced by a measure of trust." Id. at 594. Although Sacred Heart is presently wary of Marshfield Clinic's development efforts, the Marshfield Entities' plans do not impair the performance of those agreements in any fashion that Sacred Heart advances here, nor has Marshfield Clinic attempted to subvert Sacred Heart's rights under those contracts. In short, the circuit court properly dismissed Sacred Heart's good faith and fair dealing claim.
D. Sacred Heart's appeal as to the denial of its motion for a temporary injunction is moot.
¶38 Lastly, Sacred Heart argues the circuit court erred in denying its motion for a temporary injunction. Temporary injunctions are not to be issued unless the movant has shown, among other things, a reasonable probability of success on the merits. Werner v. A. L. Grootemaat & Sons, Inc. , 80 Wis. 2d 513, 520, 259 N.W.2d 310 (1977). Because we have concluded the circuit court properly granted the Marshfield Entities' motion for summary judgment, Sacred Heart's appeal as to the court's decision on its temporary injunction motion is moot. An issue is moot when its resolution will have no practical effect on an existing controversy. PRN Assocs. LLC v. DOA , 2009 WI 53, ¶ 25, 317 Wis. 2d 656, 766 N.W.2d 559. To the extent Sacred Heart asserts it raised this issue only to clarify the availability of other potential equitable remedies on remand, no such remedies are available given the dismissal of all of Sacred Heart's claims.
By the Court. -Judgment and order affirmed.
This opinion will not be published. See WIS. STAT. RULE 809.23(1)(b)5.

MCHS is the owner and sole shareholder of Marshfield Clinic and MCHS Hospitals.

The Parking Agreement clarified that the easement was "not intended to benefit the hospital building that MCHS is proposing for construction on the [Hospital] Parcel ...." In addition, staff and visitors of the Marshfield Clinic were granted the right to use portions of the Hospital Parcel for parking.

All references to the Wisconsin Statutes are to the 2015-16 version unless otherwise noted.

Sacred Heart does not explain what legal objection it could make to interference that falls short of the "reasonable use" standard articulated in Hocking v. City of Dodgeville , 2009 WI 70, ¶ 18, 318 Wis. 2d 681, 768 N.W.2d 552.

In its reply brief, Sacred Heart argues that the Parking Agreement, by its plain terms and as a "practical matter," granted MCHS Hospitals the right to use portions of the parking lot on the Clinic Parcel. Sacred Heart's brief-in-chief, too, treats the clinic parking lot in the aggregate as encompassing both the portion of the lot on the Clinic Parcel and the portion of the lot on the McGuire Parcel. Sacred Heart also declares that the term "Marshfield Parcel," in at least the Drainage Agreement, "includes the Clinic Parcel."
Sacred Heart's attempt to treat the Clinic Parcel and the McGuire Parcel collectively for purposes of the various agreements is not borne out by the appellate record. As record support, Sacred Heart cites to the Drainage Agreement, which merely contains a legal description of the affected property attached as Exhibit A to that document. Sacred Heart has directed us to no affidavit or other evidence even hinting that Exhibit A's legal description includes land within the Clinic Parcel. Moreover, Sacred Heart's factual assertions are inconsistent with its arguments, which appear to concede that the easement grants are limited to a portion of the McGuire Parcel. Conversely, the Marshfield Entities' assertion that the easements do not include any part of the Clinic Parcel is supported by an affidavit.
Sacred Heart also makes much of the parties' promise to maintain a "single continuous parking lot." In doing so, however, Sacred Heart misconstrues the ownership of the various parcels and ignores the summary judgment standard. Without providing relevant record support for its factual assertion that the Drainage and Parking Agreements grant MCHS Hospitals an interest in the Clinic Parcel, Sacred Heart's claims related to its right of first refusal must fail. Again, Sacred Heart's argument appears to concede that no such interest was granted by the relevant agreements.

Wisconsin Stat. § 50.33(2) specifically defines the term "hospital," and that is the definition to which the parties were apparently referring in the 2006 Declaration.

In its reply brief, Sacred Heart claims the record is "replete with evidence from which a jury could conclude that the Parking Lot Parcel will inevitably be used for hospital parking ...." Yet Sacred Heart devotes only one page in its reply brief to the actual record evidence, which we have discussed in detail above. Sacred Heart's belief about the overwhelming nature of the evidence appears to be based on its failing to differentiate the hospital's parking needs from the overall campus's parking needs, and also on highly ambiguous portions of documents whose significance Sacred Heart never adequately explains (by affidavit or otherwise). Contrary to Sacred Heart's assertions about the robust supporting nature of the appellate record, the actual evidence it cites in support of its appellate arguments is lacking.

On appeal, Sacred Heart declares: "The manifest intent of the [land use] restriction was to prevent this parcel from being used to support a competing hospital ." It then immediately states: "Had the parties, in drafting the restriction, more narrowly focused on whether the property could be used as a parking lot for a hospital, such use would have been expressly restricted ." The juxtaposition of these assertions is odd, specifically in the context of attempting to explain how the Marshfield Entities are "tak[ing] opportunistic advantage in a way that could not have been contemplated at the time of drafting, and which therefore was not resolved explicitly by [Sacred Heart and the Marshfield Clinic]." See Market St. Assocs. Ltd. P'ship v. Frey , 941 F.2d 558, 595 (7th Cir. 1991). In one breath Sacred Heart contends "the manifest intent" of the land use restriction was to stop the parcel from being used "to support" a competing hospital. Yet then Sacred Heart also seems to posit that, despite this admitted understanding at the time of contracting, not only did the parties (or at least Sacred Heart) not actually consider that such "support" could include using the parcel as parking for a nearby hospital, but that such a notion was so far outside the realm of foreseeability that they could not have contemplated such use at the time. We fail to follow the logic in such a conclusion.